UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

KING RANGE, JR.,

              Plaintiff,

      -against-

230 WEST 41ST STREET LLC, HAT
TRICK PIZZA, INC., DOMINO'S PIZZA
LLS, DOMINO'S PIZZA FRANCHISING
LLC ,

           Defendants.

-------------------------------------------------- X

           Civil Action No.: 1:17-cv-00149-LAP

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS
230 WEST 41ST STREET LLC AND HAT TRICK PIZZA, INC.**

---

SEYFARTH SHAW LLP

John W. Egan
Paul H. Galligan
Samuel Sverdlov
jegan@seyfarth.com
pgalligan@seyfarth.com
ssverdlov@seyfarth.com
620 Eighth Avenue, 32nd Floor
New York, New York  10018
(212) 218-5500

*Attorneys for Defendant*
*230 West 41st Street LLC*

LITCHFIELD CAVO LLP

Angela M. Objay-Stenroos
stenroos@litchfieldcavo.com
420 Lexington Avenue, Suite 2104
New York, New York 10170
(212) 434-0100

*Attorneys for Defendant*
*Hat Trick Pizza, Inc.*

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................. 1

II.    STATEMENT OF FACTS ..................................................................... 4

ARGUMENT ........................................................................................ 4

I.    LEGAL STANDARDS ......................................................................... 4

II.    ADA STANDARDS DO NOT APPLY BASED ON AN ALTERATION TO
THE ENTRANCE ................................................................................ 5

    A.    The Entrance Has Not Been Altered Since The ADA Effective Date ................... 5

        1.    Legal Standards For Alterations ................................................. 5

        2.    The Entrance Steps Have Not Been Altered ................................ 6

    B.    A Permanent Ramp Or Lift Would Be Disproportionate To Alterations
Performed To The Primary Function Area Of The Property ................................ 7

        1.    Path Of Travel Requirements For Alterations To "Primary
Function" Areas ........................................................................ 7

        2.    Neither A Permanent Ramp Nor A Lift Is Required By ADA "Path
of Travel" Requirements ............................................................ 7

III.    COMPLIANCE WITH ADA DESIGN CRITERIA IS NOT REQUIRED UNDER
THE STANDARD FOR READILY ACHIEVABLE BARRIER REMOVAL ................. 8

    A.    Legal Framework For Readily Achievable Barrier Removal ............................... 8

        1.    Plaintiff's Prima Facie Burden To Show That A Method Of
Removing Pre-ADA Barriers Is Readily Achievable ............................... 9

    B.    Plaintiff's Ramp Proposals Are Not Required By The Readily Achievable
Barrier Removal Standard ..................................................................... 10

        1.    Plaintiff Has Not Introduced Sufficient Evidence That His Ramp
Designs Are Plausible ............................................................... 10

        2.    Plaintiff Has Not Introduced Evidence Of Costs ...................................... 11

    C.    Plaintiff Has Not Met His Prima Facie Burden To Show That An ADA
Lift Is Readily Achievable ..................................................................... 11

        1.    Lift Installation Would Cost $199,000 Or More ...................................... 12

2.      Minimal Benefit To Plaintiff ....................................................... 13

D.      Defendants Have Met Their Burden Of Persuasion That A Lift Is Not
Readily Achievable ............................................................................ 14

1.      Nature And Cost Of The Lift Alteration.................................... 14

2.      Overall Financial Resources, Staffing, And Impacts On Operation ........ 15

a.      Hat Trick Pizza, Inc. ....................................................... 15

b.      230 West 41st Street LLC .............................................. 16

3.      Geographic Separateness And Relationship Of The Property To
Any Parent Entities And The Operations, Staffing, And Resources
Of Those Entities ....................................................................... 16

E.      No Injunctive Relief Would Be Appropriate In This Case .................................. 17

IV.     PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF UNDER THE NEW
YORK STATE AND CITY HUMAN RIGHTS LAWS SHOULD ALSO BE
DISMISSED WITH PREJUDICE ...................................................................... 18

V.      THE COURT SHOULD DISMISS PLAINTIFF'S NEGLIGENCE AND
NYSCRL CLAIMS ............................................................................................. 19

VI.     THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER
PLAINTIFF'S REMAINING CLAIMS ............................................................ 20

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ametex Fabrics, Inc. v. Just In Materials, Inc.*,
140 F.3d 101 (2d Cir. 1998)...................................................20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..............................................................4

*Bebry v. AJAC LLC*,
954 F. Supp. 2d 173 (E.D.N.Y. 2013) ..................................18

*Borkowski v. Valley Cent. Sch. Dist.*,
63 F.3d 131 (2d Cir. 1995)......................................................9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)................................................................4

*Francis v. Lo-Do Corp.*,
No. 14-cv-5422, 2014 WL 7180091 (S.D.N.Y. Dec. 5, 2014) ................................19

*Grenier v. Stamford Hosp. Stamford Health Sys., Inc.*,
No. 3:14-cv-0970, 2017 WL 2259765 (D. Conn. May 23, 2017) ..........................................20

*Hurley v. Tozzer, Ltd.*,
No. 15-cv-2785, 2018 WL 1872194 (S.D.N.Y. Feb. 2, 2018), *report and
recommendation adopted*, 2018 WL 108794 (S.D.N.Y. Feb. 22, 2018) ................................11

*Kreisler v. Second Ave. Diner Corp.*,
No. 10-cv-7592, 2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012), *aff'd*, 731 F.3d
184 (2d Cir. 2013)............................................................9, 11

*Krist v. Kolombos Rest., Inc.*,
688 F.3d 89 (2d Cir. 2012)...................................................5, 18

*Lugo v. St. Nicholas Assoc.*,
772 N.Y.S.2d 449 (N.Y. Sup. Ct. N.Y. Cnty. 2003)..............................19

*Marradi v. Gallway House, Inc.*,
No. 13-cv-10813, 2014 WL 1454266 (D. Mass. Apr. 15, 2014)...........................................11

*Panzica v. Mas-Maz, Inc.*,
No. 05-cv-2595, 2007 WL 1732123 (S.D.N.Y. June 11, 2007) ........................................10, 14

*Parker v. Sony Pictures Entm't, Inc.*,
260 F.3d 100 (2d Cir. 2001)....................................................4

*Pascuiti v. N.Y. Yankees*,
  No. 98-cv-8186, 1999 WL 1102748 (S.D.N.Y. Dec. 6, 1999) ................................9

*Pimentel v. Citibank, N.A.*,
  29 A.D.3d 141 (1st Dep't 2006) ......................................................................19

*Roberman v. Alamo Drafthouse Cinemas Holdings, LLC*,
  No. 508293/2019, 2020 WL 253372 (Sup. Ct. Kings Cnty. Jan. 13, 2020) ...........18

*Roberts v. Royal Atl. Corp.*,
  542 F.3d 363 (2d Cir. 2008) ..................................................................... *passim*

*Shariff v. Amanda Realty, Inc.*,
  No. 11-cv-2547, 2013 WL 5522444 (E.D.N.Y. Sept. 30, 2013) ...........................6

*Shepheard v. N.Y.C. Correctional Dep't*,
  360 F. App'x 249 (2d Cir. Jan. 13, 2010) ........................................................17

*Silver v. Equitable Life Assur. Soc. of U.S.*,
  168 A.D.2d 367 (1st Dep't 1990) .....................................................................19

*Speciner v. NationsBank, N.A.*,
  215 F. Supp. 2d 622 (D. Md. 2002) ..................................................................8

*Stephens v. Shuttle Assoc., L.L.C.*,
  547 F. Supp. 2d 269 (S.D.N.Y. 2008) ..............................................................18

*Sundaram v. Brookhaven Nat'l Labs.*,
  424 F. Supp. 2d 545 (E.D.N.Y. 2006) ..............................................................19

*Thomas v. Ariel West*,
  242 F. Supp. 3d 293 (S.D.N.Y. 2017) ..............................................................19

**Statutes**

28 U.S.C. § 1367(c) ...............................................................................................20

42 U.S.C. § 12181(9) ....................................................................................8, 14, 17

42 U.S.C. §12182(a) ...............................................................................................5

42 U.S.C. § 12182(b)(2)(a)(iv) ...............................................................................8

42 U.S.C. § 12183(a)(1) ..........................................................................................5

42 U.S.C. § 12183(a)(2) ......................................................................................5, 7

42 U.S.C. § 12188(a)(1) ..........................................................................................5

Americans with Disabilities Act Title III ("ADA")............................................................ *passim*

N.Y.S. Exec. L. § 296(2) ...................................................................................................18

New York City Human Rights Law ("NYCHRL")............................................................ *passim*

New York State Civil Rights Law ("NYSCRL") ........................................................1, 4, 19, 20

New York State Human Rights Law ("NYSHRL") ....................................................1, 4, 18, 20

**Other Authorities**

28 C.F.R. § 36.104.........................................................................................................14, 17

28 C.F.R.§ 36.304(a)...........................................................................................................8

28 C.F.R. § 36.304(b)(1)-(21).............................................................................................8

28 C.F.R. § 36.304(e).........................................................................................................17

28 C.F.R. § 36.305(b)(1).....................................................................................................17

28 C.F.R. § 36.402(a)(1).......................................................................................................6

28 C.F.R. § 36.402(b)(1).......................................................................................................6

28 C.F.R. § 36.402(b)(2).......................................................................................................6

28 C.F.R. § 36.403(a)(1)....................................................................................................5, 7

28 C.F.R. § 36.403(b)...........................................................................................................7

28 C.F.R. § 36.403(c)(2).......................................................................................................5

28 C.F.R. § 36.403(f)..........................................................................................................7, 8

28 C.F.R. § 36.403(f)(1)........................................................................................................8

28 C.F.R. § 36.403(g)(1).......................................................................................................8

28 C.F.R. § 36.403(h)(2)(i)....................................................................................................8

36 C.F.R. Part 1191, App. B and D .......................................................................................5

36 C.F.R. § 1191.1(a)............................................................................................................5

75 Fed. Reg. 56236 (Sept. 15, 2010) ...................................................................................5

28 C.F.R. Part 36, subpart D (28 C.F.R. § 36.401-407) ......................................................5

Fed. R. Civ. P. 56(c) ................................................................................................................4

Fed. R. Civ. P. 56(e) ................................................................................................................4

Local Civ. R. 56.1 ....................................................................................................................4

## I.      PRELIMINARY STATEMENT

Plaintiff commenced this action against Defendants 230 West 41st Street, LLC ("230 West") and Hat Trick Pizza, Inc. ("Hat Trick") (collectively, "Defendants"), as well as Defendants Domino's Pizza LLC and Domino's Pizza Franchising LLC.  He asserts claims for relief under Title III of the Americans with Disabilities Act ("ADA"), New York State Human Rights Law ("NYSHRL"), New York State Civil Rights Law ("NYSCRL"), and New York City Human Rights Law ("NYCHRL"), and for common law negligence.  Plaintiff is not entitled to injunctive relief as a matter of law.

The only issue in this case is whether Defendants are obligated to remove two steps at the entrance of the Domino's pizza store at 227 West 40th Street (the "Property").  The Property is located on the ground floor of a converted newspaper publishing and distribution facility that is approximately 100 years old (the "Building").  Removing the steps will require removal of reinforced concrete, which will compromise the structural integrity of the Building.  It would require structural reinforcement at a total project cost of at least $199,000 to $233,230, based on design plans that Defendants procured from an architect and structural engineer.

Plaintiff is a wheelchair user and considers himself an ADA Title III "tester" who has filed 16 similar access cases in this District over the last 6 years.  Plaintiff visited the Property with his girlfriend, another "tester" plaintiff, on one occasion more than three years ago.  Plaintiff observed the stepped entrance and left.  He did not complain to anyone (or even raise the issue again with his girlfriend) after that visit.  Plaintiff does not live in the vicinity of the Property and has not been back to the neighborhood since.  Notably, this lawsuit was the first accessibility complaint that Hat Trick or 230 West ever received concerning the Property.

Defendants have an obligation under the ADA to remove architectural barriers when it is "readily achievable" to do so.  This refers to simple, low-cost fixes that are "easily accomplishable

and able to be carried out without much difficulty or expense." Where a permanent accessible entrance is not readily achievable, ADA regulations expressly provide that public accommodations can utilize a portable ramp equipped with safety features, or even curbside service. Defendants have employed both measures to accommodate patrons with disabilities.

Because the entrance to the Property has not been altered since the ADA, Plaintiff has a *prima facie* burden to introduce, through an expert, a (1) plausible proposal for barrier removal and (2) an estimate for how much the proposal would cost to implement. Plaintiff has not met his burden in either respect.

Plaintiff has not introduced a plausible proposal. His plan is comprised of two sketches for raising the sidewalk on the outside of the Property, and installing an interior ramp. His expert report does not even address readily achievable barrier removal, instead citing the presence of the steps as a violation of *post-ADA* accessibility criteria, which do not apply. The expert does not address structural or other impacts on the Building in the report, although he admitted at deposition that the ramp design would impact the Building structure and thus require engineering expertise that he does not have. In addition, based on various miscalculations and inaccurate measurements, Plaintiff's sketches do not even show ADA-compliant designs or address the impact of sidewalk modifications to an adjacent tenant entrance.

Plaintiff also has not satisfied his threshold burden relating to cost. Plaintiff's expert report does not even address cost. It is not disputed that Plaintiff's ramp proposals require a structural engineer to determine what reinforcement of the Building would be required. Plaintiff never shared Defendants' structural drawings or cost estimates with his expert. Plaintiff's expert is thus not even in a position to speculate on the threshold question of cost.

Defendants engaged an ADA expert, a structural engineer and an architect to evaluate accessibility options, and considered the feasibility of installing an ADA lift.  They also solicited bids from four contractors for the installation of an incline lift.  If Plaintiff relies instead on Defendants' lift proposal as the readily achievable option the Court should order, then his claim for injunctive relief fails as a matter of law.  The facts relevant to the design and construction of a lift are not in dispute.

The project would require the installation of a 21-foot long steel beam in the basement to provide the necessary structural support to allow an 81-square foot area of the floor to be completely demolished.  As rebar connections in the concrete that support the Building would be severed, Defendants would have to construct steel framing for the new concrete floor at the same grade as the sidewalk.  That framing would be supported by new columns in the basement, which would need to be supported by footings to be installed beneath the existing Building foundation.

Further, a geotechnical engineer would need to core and test the soils, after selective demolition of the foundation, to determine whether they can sustain the load created by the new floor and structure.  Because mechanical, electrical and other pipes and connections run along the underside of the first floor, those pipes and connections would need to be relocated.  Defendants received bids from two of the four contractors of $199,000 and $233,230 for this work.  The bids excluded the costs of geotechnical analysis and relocation of these pipes and connections, and also did not factor in the costs associated with business interruption since Hat Trick would need to close its business for approximately 3 to 4 weeks.

The undisputed costs and impacts of this project on the Building, its operations and tenants are fundamentally inconsistent with the concept of "readily achievable."  The lift project would be neither "easily accomplishable" nor capable of being performed "without much difficulty or

expense."  Based on the portable ramp, ADA signage, and doorbell that are already in place at the Property, there is no injunctive relief that the Court should order.

The only claims that should survive this motion are Plaintiff's claims for damages under the NYSHRL and NYCHRL.  Plaintiff has failed to support his claim under the NYSCRL with required documentary proof, and his claim for negligence and for failure to provide an accommodation are each unfounded.  The Court should exercise supplemental jurisdiction over the remaining damages claims and set them down for trial.

## II.   STATEMENT OF FACTS

Defendants respectfully refer the Court to their Statement of Undisputed Material Facts pursuant to Local Rule 56.1 ("56.1 Stmt.").

## ARGUMENT

## I.   LEGAL STANDARDS

Defendants are entitled to summary judgment where there is no genuine issue as to any material fact and the plaintiff's claims fail as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  Although the moving party must show that "there is an absence of evidence to support the nonmoving party's case," summary judgment is appropriate if the plaintiff "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."  *Id.* at 323, 325.  Thus, Defendants "need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'"  *Parker v. Sony Pictures Entm't, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex*, 477 U.S. at 324); Fed. R. Civ. P. 56(e).   "If the evidence [presented by the non-moving party] is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* (quoting *Anderson*, 477 U.S. at 249-50).

Title III of the ADA prohibits "any person who owns, leases (or leases to), or operates a place of public accommodation" from discriminating against any individual "on the basis of disability in the full and equal enjoyment" of the facility.  42 U.S.C. §12182(a).  To establish liability under Title III, Plaintiff must demonstrate that: (1) he has a disability within the meaning of the ADA; (2) Defendants are owners, operators, lessors or lessees of a place of public accommodation; and (3) Defendants discriminated against Plaintiff within the meaning of the statute.  *See Krist v. Kolombos Rest., Inc.*, 688 F.3d 89, 94-95 (2d Cir. 2012) (citing *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008)).  Only the third element is at issue here.

## II.    ADA STANDARDS DO NOT APPLY BASED ON AN ALTERATION TO THE ENTRANCE

### A.    The Entrance Has Not Been Altered Since The ADA Effective Date

#### 1.    Legal Standards For Alterations

Discrimination under Title III of the ADA includes a failure to comply with the applicable ADA Standards for Accessible Design in constructing new public accommodations after March 15, 1993, and making alterations after January 26, 1992.  42 U.S.C. §§ 12188(a)(1), 12183(a)(1), 12183(a)(2).  Any alterations performed on or after March 15, 2012, must comply with the 2010 ADA Standards for Accessible Design ("2010 Standards") "to the maximum extent feasible."  28 C.F.R. § 36.403(a)(1), as amended at 75 Fed. Reg. 56236 (Sept. 15, 2010).[1]

Not every physical change to a commercial facility qualifies as an ADA "alteration."  42 U.S.C. § 12183(a)(2).  The "alteration" must "affect the usability of or access to an area of a facility" before it triggers compliance. 28 C.F.R. § 36.403(a)(1).  Renovations to windows, hardware, controls, electrical outlets, and signage will not affect "usability." 28 C.F.R. §

---

[1]    The 2010 Standards consist of and are codified at 36 C.F.R. Part 1191, App. B and D and 28 C.F.R. Part 36, subpart D (28 C.F.R. § 36.401-407).  36 C.F.R. § 1191.1(a) & Notes.

36.403(c)(2).  Similarly, "[n]ormal maintenance, reroofing, painting or wallpapering, asbestos removal, or changes to mechanical and electrical systems are not alterations unless they affect the usability of the building or facility." 28 C.F.R. § 36.402(b)(1).  When a public accommodation makes an alteration, its compliance obligation extends to the altered area only.  28 C.F.R. § 36.402(b)(2); 28 C.F.R. § 36.402(a)(1); *see also Shariff v. Amanda Realty, Inc.*, No. 11-cv-2547, 2013 WL 5522444, at *8 n.6 (E.D.N.Y. Sept. 30, 2013) ("Only new construction and altered portions of existing facilities must comply with the standards of the ADA.").  According to the Second Circuit, the plaintiff has the initial burden to: (1) identify a "modification to a facility"; and (2) make "a facially plausible demonstration that the modification is an alteration under the ADA." *See Roberts*, 542 F.3d at 371.

### 2.     The Entrance Steps Have Not Been Altered

Upon taking possession 2002, Hat Trick renovated the Property to construct its pizza store. (56.1 Stmt., ¶¶ 21, 25.)  It did not modify the entrance. (56.1 Stmt., ¶ 28.)  In 2014-2015, Hat Trick updated certain elements of the Property.  (56.1 Stmt., ¶¶ 40, 45-48.)  It did not alter the entrance at that time either.[2]  What modifications Hat Trick did perform were in full compliance with ADA Design Standards and the New York City Building Code based on Plaintiff's expert inspection. (56.1 Stmt., ¶ 122.)  Plaintiff has not elicited any evidence of alterations to the Property entrance by Hat Trick or any other entity at any time after January 26, 1992.

---

[2]     After taking possession of the Property, Hat Trick installed a diamond plating surface at the entrance steps, in order to maintain and protect the underlying tile  (56.1 Stmt., ¶ 46.)  This modification had no impact on the manner in which patrons enter and exit the Property and was installed for maintenance purposes.  It therefore does not qualify as an ADA alteration.

**B.** **A Permanent Ramp Or Lift Would Be Disproportionate To Alterations Performed To The Primary Function Area Of The Property**

      **1.** **Path Of Travel Requirements For Alterations To "Primary Function" Areas**

When a public accommodation performs alterations, the ADA also requires that the "path of travel" to the altered area, as well as the "bathrooms, telephones, and drinking fountains serving the altered area" must comply as well, subject to two limitations. First, only alterations to a "primary function" area (*i.e.*, area hosting "a major activity for which the facility is intended") trigger these obligations. 28 C.F.R. § 36.403(b). Second, public accommodations do not have to comply to the maximum extent feasible where compliance would be "disproportionate" to the alterations budget. 42 U.S.C. § 12183(a)(2); *see also* 28 C.F.R. § 36.403(a)(1). Public accommodations must only spend up to 20 percent of their alterations budget on the accessibility of paths of travel, bathrooms, water fountains and public telephones. 28 C.F.R. § 36.403(f). They are not required to make changes that would exceed this 20 percent maximum because they would then be deemed disproportionate. *Id.*

      **2.** **Neither A Permanent Ramp Nor A Lift Is Required By ADA "Path of Travel" Requirements**

Plaintiff failed to show that an injunction is warranted under the ADA's "path of travel" requirements. (Complaint, ¶¶ 47, 92-94.) Most of the renovations performed by Hat Trick over the last 20 years involved installing new pizza ovens, upgrading of employee work stations, décor and signage changes, and branding updates. (56.1 Stmt., ¶¶ 45-48.) These renovations qualify neither as ADA alterations nor as changes to a "primary function" area. 28 C.F.R. § 36.403(a)(1).

With respect to the lift design, there is no dispute that Defendants received exclusion-laden bids from two contractors for $199,000 and $233,230, respectively. (56.1 Stmt., ¶¶ 113-116.) Assuming, *arguendo*, that the cost of the lift would be $199,000, then it would only qualify as

proportionate if at least $995,000 were expended on covered alterations to areas of primary function over a three-year period after January 26, 1992.  28 C.F.R. § 36.403(f), (h)(2)(i).  It is undisputed that any alterations to primary function areas of the Property did not even approach such a figure.[3]  Accordingly, Defendants had no obligation to fully conform the entrance to the ADA Standards, as such conformance would have been grossly disproportionate based on the undisputed alterations history.  *See Speciner v. NationsBank, N.A.*, 215 F. Supp. 2d 622, 635 (D. Md. 2002) (no path of travel violation where compliance with ADA design criteria would impose six-figure costs that would have exceeded 20 percent of the $294,000 in total alterations costs to address the primary function area of the facility (*i.e.*, $58,800)).

III.   **COMPLIANCE WITH ADA DESIGN CRITERIA IS NOT REQUIRED UNDER THE STANDARD FOR READILY ACHIEVABLE BARRIER REMOVAL**

   A.   **Legal Framework For Readily Achievable Barrier Removal**

Federal law requires pre-ADA public accommodations to "remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(a)(iv).  The ADA defines "readily achievable" to mean "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9); *see also* 28 C.F.R.§ 36.304(a).  ADA regulations provide an illustrative list of simple and low-cost fixes applicable for these pre-existing facilities. *See* 28 C.F.R. § 36.304(b)(1)-(21).  The Second Circuit requires an ADA plaintiff to demonstrate that barrier removal is "'easily accomplishable and able to be carried out without much difficulty

---

[3]   ADA regulations provide that where the cost of making the path of travel accessible exceeds "20% of the cost of the alteration to the primary function area," public accommodations should undertake less costly remediation "without incurring disproportionate costs."  28 C.F.R. § 36.403(f)(1), (g)(1).  As discussed herein at *supra*, Point E, Hat Trick's remedial measures have satisfied any obligation to address the path of travel in a manner proportionate to the alterations history of the Property.

or expense'" as part of his or her *prima facie* case. *Roberts*, 542 F.3d at 373 (internal citation omitted).

### 1. Plaintiff's *Prima Facie* Burden To Show That A Method Of Removing Pre-ADA Barriers Is Readily Achievable

In *Roberts*, the Second Circuit held that the plaintiff has the initial burden "to articulate a plausible proposal for [readily achievable] barrier removal, the costs of which, facially, do not clearly exceed its benefits". *Roberts*, 542 F.3d at 373 (internal quotation and citation omitted). If the plaintiff satisfies this burden, then the defendant bears the ultimate burden of persuasion to demonstrate that the plaintiff's proposal is not readily achievable, by a preponderance of the evidence. *Id.* The Second Circuit has held that public accommodations should be able to "quickly dispose of non-meritorious claims by reference to their knowledge and information regarding their own facilities" under this standard. *Id.* at 372 n. 6; *see also Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 139 (2d Cir. 1995) (applying same standard in Section 504 context and observing that it "will permit district courts to grant summary judgments for defendants in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly"); *Pascuiti v. N.Y. Yankees*, No. 98-cv-8186, 1999 WL 1102748, at *4 (S.D.N.Y. Dec. 6, 1999) (*prima facie* burden heavier for ADA plaintiff to show "readily achievable" proposal than plaintiff seeking disability accommodations in the workplace).

Specifically, an ADA plaintiff must introduce evidence of (1) a plausible proposal for barrier removal, and (2) the estimated costs of that proposal. *Kreisler v. Second Ave. Diner Corp.*, No. 10-cv-7592, 2012 WL 3961304, at *7 (S.D.N.Y. Sept. 11, 2012) (rejecting the plaintiff's proposal for interior ramp where the plaintiff "failed to provide even a general cost estimate …"), *aff'd,* 731 F.3d 184 (2d Cir. 2013). The plaintiff can satisfy this burden only through expert

testimony.  *Panzica v. Mas-Maz, Inc.*, No. 05-cv-2595, 2007 WL 1732123, at *5 (S.D.N.Y. June 11, 2007).

### B.    Plaintiff's Ramp Proposals Are Not Required By The Readily Achievable Barrier Removal Standard

#### 1.    Plaintiff Has Not Introduced Sufficient Evidence That His Ramp Designs Are Plausible

Plaintiff has not satisfied his threshold burden to show that his ramp sketches are plausible. The two sketches appended to the report (identified as SK-01 and SK-02) are not addressed anywhere in the report narrative.   The report does not address, for example, the impact of the project on structural integrity, Building operations, pedestrian access, or city approval.  *See Panzica*, 2007 WL 1732123, at *9 (summary judgment granted where "analysis of the feasibility or difficulty of the suggested modifications or their impact upon the … [defendant's] business operation" was "wholly absent from the plaintiff's [expert] submission").

The sketches are also implausible because they are replete with admitted design errors.  At his deposition, Plaintiff's expert testified that he designed an inadequate ramp landing in SK-01, and the interior ramps shown both SK-01 and SK-02 are based on an incorrect floor elevation. (56.1 Stmt. ¶¶ 151-152, 154.)   As a result, the ramps would need to be longer than what is shown in the drawings, in a different position, and equipped with handrails. (56.1 Stmt. ¶ 155.)  The exterior ramped sidewalk shown in these drawings also admittedly fails to connect to an ADA accessible route.  (56.1 Stmt. ¶¶ 157-160, 163.)  *See* 2010 Standards § 206.2.1 (requiring at least one accessible route to connect site arrival points such as a public sidewalk with accessible entrance).   Plaintiff's expert admits that his design requires collaboration with a structural engineer, but Plaintiff failed to engage one.  (56.1 Stmt. ¶¶ 129-130, 134.)  In addition, Plaintiff's expert admits that his sidewalk design would impact the adjacent tenant, but he does not know the extent of the impact, or even if his design is "workable" in that respect. (56.1 Stmt. ¶¶ 148-150,

156.)  Plaintiff's ramp sketches amount to nothing more than the type of "rank speculation" that the Second Circuit has held is not sufficient to satisfy this burden.  *Kreisler*, 2012 WL 3961304, at *8.

### 2.     Plaintiff Has Not Introduced Evidence Of Costs

In addition, Plaintiff has not provided any expert cost estimates for his designs.  (56.1 Stmt. ¶¶ 143, 146-147.)  For this reason alone, Plaintiff has failed to satisfy his readily achievable burden. *See Marradi v. Gallway House, Inc.*, No. 13-cv-10813, 2014 WL 1454266, at *5 (D. Mass. Apr. 15, 2014) (ADA plaintiff who introduces an expert report with "no estimates of the costs of implementation or the relative priority of any proposed alterations" fails to satisfy his "entry-level burden of production on summary judgment" for readily achievable barrier removal).

In sum, based on Plaintiff's failure to show (1) a plausible proposal for barrier removal that is (2) supported with estimates of cost, the Court should grant summary judgment for Defendants. *See Hurley v. Tozzer, Ltd.*, No. 15-cv-2785, 2018 WL 1872194, at *7 (S.D.N.Y. Feb. 2, 2018) (granting defendant summary judgment because plaintiff's expert report has "no discussion whatsoever of the architectural modification proposals that would make … [the property] ADA compliant or any cost analysis for those modifications."), *report and recommendation adopted*, 2018 WL 108794 (S.D.N.Y. Feb. 22, 2018).

### C.     Plaintiff Has Not Met His *Prima Facie* Burden To Show That An ADA Lift Is Readily Achievable

In response to this motion, Plaintiff may retreat to a position that, at a minimum, Defendants' lift design would qualify as readily achievable.  However, this proposal also fails to satisfy Plaintiff's burden to introduce a barrier removal proposal "the costs of which, facially, do not clearly exceed its benefits."  *Roberts*, 542 F.3d at 373 (internal quotations and citation omitted). The facts elicited in discovery show that Plaintiff has, at best, a passing interest in the accessibility

of the Property, which is grossly disproportionate to the expense that the construction of a lift would impose, particularly considering that access is already being provided through alternative means.

### 1.    Lift Installation Would Cost $199,000 Or More

The Property is part of a converted newspaper publishing and distribution facility previously owned by the *Herald Tribune*. (56.1 Stmt. ¶ 17.) The Building was first constructed approximately 100 years ago. (56.1 Stmt. ¶ 17.) The concrete floors are reinforced with rebar and support the Building. (56.1 Stmt. ¶ 79.) The first floor at the Property is approximately two feet higher than the sidewalk. (56.1 Stmt. ¶¶ 20, 83.) Removing the entrance steps would require complete demolition of an 81-square foot area of the floor. (56.1 Stmt. ¶ 95.) In that area, the rebar that supports the Building would be severed. (56.1 Stmt. ¶ 96.) The structural strength lost from this alteration would need to be replaced through reinforcement. (56.1 Stmt. ¶¶ 98-99.)

There are three components of the required reinforcement. First, a 21-foot-long steel beam would have to be installed in the basement and tied into the existing Building columns. (56.1 Stmt. ¶ 98.) Second, steel framing would be required to support the new concrete floor. (56.1 Stmt. ¶ 98.) Third, steel posts would have to be installed in footings beneath the existing Building foundation to support the new concrete floor. (56.1 Stmt. ¶¶ 98-99.) This installation would require field testing and analysis by a geotechnical engineer to determine whether the underlying soils have the requisite bearing capacity to support the load imposed by this construction. (56.1 Stmt., ¶¶ 103-104.)

After the floor is lowered, a lift would be installed on the new floor, and supplied with power. (56.1 Stmt. ¶ 107.) In addition, the entrance door and framing would need to be replaced, new steps would have to be placed at locations set back farther from the entrance, and flooring material would be installed on top of the new slab to match what currently exists at the Property.

(56.1 Stmt. ¶ 108.)   Additionally, there are many mechanical, electrical, and/or plumbing connections that would need to be relocated to accommodate the floor alteration.  (56.1 Stmt. ¶ 109.)

Defendants placed the project out to bid to four contractors, although only two provided proposals.  (56.1 Stmt., ¶¶ 111-112.)   One contractor submitted a bid for $199,000 and the other submitted a bid for $233,230.  (56.1 Stmt., ¶¶ 113-114.)   Both include numerous exclusions, including the cost of a geotechnical engineer to perform the testing and certifications for the footing installation referenced above, permitting and other anticipated expenses, as well as the costs to relocate the mechanical, electrical and/or plumbing connections than run along the underside of the floor.  (56.1 Stmt., ¶¶ 115-116.)

### 2.    Minimal Benefit To Plaintiff

Plaintiff attempted to access the Property one time more than three years ago.  (56.1 Stmt. ¶¶ 54-55.)  He does not live in the vicinity of the Property, and has not been back that area of 40th Street since his initial visit.  (56.1 Stmt. ¶¶ 1, 53, 65.)   After observing the stepped entrance, he left without attempting to contact any store personnel.  (56.1 Stmt. ¶¶ 58, 61.)   Plaintiff never complained to anyone about the condition.  (56.1 Stmt. ¶ 63.)

This case is one of 17 similar actions that Plaintiff has filed in this jurisdiction.  (56.1 Stmt. ¶ 188.)  Plaintiff visited the Property with his girlfriend, a wheelchair user who has filed 26 ADA Title III lawsuits in this jurisdiction.  (56.1 Stmt. ¶ 52.)   They did not speak of this matter until months after Plaintiff filed the action.  (56.1 Stmt. ¶ 59.)   Until his deposition, Plaintiff was unaware that Hat Trick offered to and ultimately did undertake accessibility-related alterations and employee training to facilitate the use of a portable ramp at the Property.  (56.1 Stmt. ¶¶ 70-72.)  He has made no effort to evaluate the accessibility of the Property since Hat Trick employed these measures.  (56.1 Stmt. ¶¶ 65-66.)

While Plaintiff may have standing to challenge barriers as a "tester," that does not mean he is entitled to subject Defendants to a "protracted, expensive, and harassing trial[]" over a method of barrier removal that, undisputedly, will require structural reinforcement of the Building and impose costs of $199,000 or more. *Panzica*, 2007 WL 1732123, at *4 (internal quotations and citations omitted). Plaintiff has not made a threshold showing of proportionality between the benefits, on one hand, and the costs of the lift proposal, on the other. Accordingly, the Court should grant summary judgment.

### D. Defendants Have Met Their Burden Of Persuasion That A Lift Is Not Readily Achievable

Even if Plaintiff had satisfied his *prima facie* burden as to the lift proposal, Defendants should still prevail as a matter of law because they have met their ultimate burden of persuasion. *Roberts*, 242 F.3d at 373. The definition of "readily achievable" in ADA regulations references several factors for consideration. 28 C.F.R. § 36.104. *See also* 42 U.S.C. § 12181(9)(A)-(D). Application of those factors to the matter at hand confirms that the structural alteration and reinforcement required to accommodate an ADA lift would not qualify as "easily accomplishable and able to be carried out without much difficulty or expense."

#### 1. Nature And Cost Of The Lift Alteration

The lift project would require the installation of a 21-foot long steel beam to provide the necessary structural support for the demolition of an 81-square foot area of the existing floor. (56.1 Stmt. ¶¶ 95, 98.) The tenants above the first floor, including the CUNY School of Journalism, lease office space in the Building. (56.1 Stmt. ¶ 167.) Accordingly, the demolition and other construction activities causing excessive noise would have to be performed during the overnight hours and at overtime wage rates. (56.1 Stmt. ¶¶ 168, 170.) Further, as noted above, the mechanical, electrical, and/or plumbing connections along the underside of the floor would need

to be relocated.  (56.1 Stmt. ¶¶ 109-110, 116.)   The bids for $199,000 and $233,230 exclude the costs of geotechnical analysis, the added costs of non-business hour work, and the relocation of these connections, among other expenses.  (56.1 Stmt. ¶ 116; *see supra,* Section C(1).)

### 2.     Overall Financial Resources, Staffing, And Impacts On Operation

#### a.     Hat Trick Pizza, Inc.

Hat Trick operates a franchised Domino's pizza store at the Property with approximately 27 employees. (56.1 Stmt., ¶¶ 11, 13.)  The costs and other impacts required to install a lift would be substantial for this entity.

When Hat Trick built out the space in 2002 it cost $278,200.00, which required Hat Trick to take out a business loan.  (56.1 Stmt., ¶¶ 26-27.)  Hat Trick undertook certain franchise-mandated renovations in 2014-2015 that included the sales and service counter, flooring, signage, and employee areas.  (56.1 Stmt., ¶¶ 41, 45-47.)  Available records show that this project cost $173,155.  (56.1 Stmt., ¶ 49.)  By comparison, if the ultimate cost of the lift is $199,000 (the lowest proposal with a number of excluded costs), then that would be 72% of the original build-out, and 115% percent of the post-build-out renovations.  (56.1 Stmt., ¶ 114.)  Significantly, the cost of the lift at $199,000 would be comparable to Hat Trick's current rental payments for ███████.  (56.1 Stmt., ¶ 182.)

In addition, the above estimate does not include what Hat Trick would incur in lost revenue. Significant construction to include excavation of a large area of the floor directly across from the entrance would require the Property, a retail and food service establishment, to close for approximately 3 to 4 weeks.  (56.1 Stmt., ¶¶ 183-184.)  If the Property closed for only two weeks, for example, then Hat Trick would sustain approximately ██████ in lost revenue.  (56.1 Stmt., ¶¶ 184.)  In addition, the temporary closure would adversely impact Hat Trick's workforce.  (56.1 Stmt., ¶¶ 183-184.)

### b.      230 West 41st Street LLC

230 West owns the Building, which it operates through a third-party management company. (56.1 Stmt., ¶¶ 7, 9.)  While 230 West collects annual rent revenues in the millions, it also has a loan balance of $63,258,038 from its financing of the Building.  (56.1 Stmt., ¶ 171.)  230 West must also have cash and cash equivalents in reserve to maintain this turn-of-the-century property.  (56.1 Stmt., ¶ 172.)  The costs to implement the lift option for 230 West would, as with Hat Trick, not qualify as "without much . . . expense."

The project would also have considerable operational impacts for the Building.  (56.1 Stmt., ¶¶ 166, 168-170.)  230 West would need to secure the Property during the overnight hours to accommodate lift-related work.  (56.1 Stmt., ¶ 169.)  In addition to the costs described above for the structural and architectural changes, 230 West would be required to engage at least one engineer to provide access to the Building to the contractor any other construction personnel during the overnight hours (since staffing is not provided on a 24-hour basis), and secure the Building during the construction, to be paid at union and overtime wage rates.  (56.1 Stmt., ¶ 169.)

### 3.      Geographic Separateness And Relationship Of The Property To Any Parent Entities And The Operations, Staffing, And Resources Of Those Entities

The Research Foundation of The City University of New York (the "Foundation") is a not-for-profit company that is critical to many research initiatives and projects of The City University of New York ("CUNY").  (56.1 Stmt., ¶¶ 8, 10.)  Excess revenue after operating expenses, debt service and reserves collected by 230 West for the Building is made available to the Foundation, 230 West's managing member, to support its operating expenses.  (56.1 Stmt., ¶ 176.)  The Foundation has its only office located in the Building and directly employs approximately 200 people at that location.  (56.1 Stmt., ¶ 177.)  Specifically, the Foundation is the fiscal agent for all grants and contracts for CUNY.  (56.1 Stmt., ¶10.)  Based on relatively flat levels of grant-based

revenue over the past several years, 230 West effectively subsidizes the Foundation and, in turn, its public mission of supporting CUNY research initiatives.  (56.1 Stmt., ¶ 179.)  230 West has no employees of its own.  (56.1 Stmt., ¶ 9.)

████████████████████████████ Rolling in the Dough, which is a company that provides management and other services for other Domino's pizza stores in the Tri-State area, including for Hat Trick.  (56.1 Stmt., ¶¶ 12, 15.)  Rolling in the Dough has its office in Allentown, Pennsylvania and employs 5 people.  (56.1 Stmt., ¶ 14.)  The entities that Rolling in the Dough manages, including Hat Trick, are expected to fund any alterations or improvements through their own revenues, and operate as independently profitable stores.  (56.1 Stmt., ¶ 16.)

### E.        No Injunctive Relief Would Be Appropriate In This Case

Consideration of each of the factors set forth in the ADA and its implementing regulations demonstrate that a lift would not qualify as "easily accomplishable and . . . without much difficulty or expense" to warrant injunctive relief.  42 U.S.C. § 12181(9); 28 C.F.R. § 36.104.  ADA regulations specifically state that "when installation of a permanent ramp is not readily achievable" then "[p]ortable ramps should be used."  28 C.F.R. § 36.304(e).  The ADA regulations also provide that public accommodations may use "curb service or home delivery" as alternatives to barrier removal when, as here, the public accommodation can demonstrate that providing an accessible entrance is not readily achievable.  28 C.F.R. § 36.305(b)(1).  It is undisputed that Defendants have made accessibility-related improvements at the Property consistent with these regulations by providing a portable ramp, signage at the entrance displaying the International Symbol of Accessibility, a doorbell to alert staff, and employee training on the timely and safe use of the portable ramp and provision of curbside service upon request.   (56.1 Stmt., ¶¶ 71-72.) Accordingly, Plaintiff has not demonstrated any entitlement to injunctive relief as a matter of law. *See Shepheard v. N.Y.C. Correctional Dep't*, 360 F. App'x 249, at *1 (2d Cir. Jan. 13, 2010)

(affirming district court's granting of summary judgment to defendant because "no reasonable jury" could find that elements of disability discrimination were satisfied).

## IV.   PLAINTIFF'S CLAIMS FOR INJUNCTIVE RELIEF UNDER THE NEW YORK STATE AND CITY HUMAN RIGHTS LAWS SHOULD ALSO BE DISMISSED WITH PREJUDICE

As with his federal claim, Plaintiff cannot maintain his claim for injunctive relief under the NYSHRL.  *See* N.Y.S. Exec. L. § 296(2).  There are no relevant distinctions between this claim and ADA Title III.  *See Krist*, 688 F.3d at 97 (holding that NYSHRL claims are "coextensive" with claims under Title III of the ADA, and affirming dismissal of state claims accordingly) (citation omitted); *Bebry v. AJAC LLC*, 954 F. Supp. 2d 173, 176-177 (E.D.N.Y. 2013) (holding that claims under Title III of the ADA and the NYSHRL are governed by the same standard).

While the NYCHRL provides "somewhat broader rights" than federal law that require an "independent liberal construction," *Krist*, 688 F.3d at 97, "claims for disability discrimination arising under the NYCHRL are governed by the same legal standards as federal ADA claims." *Roberman v. Alamo Drafthouse Cinemas Holdings, LLC*, No. 508293/2019, 2020 WL 253372, at *2 (Sup. Ct. Kings Cnty. Jan. 13, 2020).  Plaintiff's claims based on disparate impact and for "aiding and abetting" disability discrimination under the NYCHRL should be dismissed because there are no relevant distinctions with the ADA.  (Complaint, ¶ 68-71, 74.)  *See also Stephens v. Shuttle Assoc., L.L.C.*, 547 F. Supp. 2d 269, 278-79 (S.D.N.Y. 2008) (dismissing claim for discriminatory treatment based on disability under the NYCHRL, including for "aid[ing] and abet[ting]" discrimination, under the NYCHRL and NYSHRL because it was "similar to those of the ADA . . .").  To the extent Plaintiff is claiming that Defendants failed to provide him a reasonable accommodation based on his disability, his city law claim should be also be dismissed in its entirety.  (*See* Complaint, ¶ 68.)  It is undisputed that Plaintiff never requested an accommodation before filing this lawsuit.  *See Roberman*, 2020 WL 253372, at *3 (dismissing

disability access claim under the NYCHRL where plaintiff never requested defendant to provide accommodation), citing *Pimentel v. Citibank, N.A.*, 29 A.D.3d 141, 148 (1st Dep't 2006)).

## V.       THE COURT SHOULD DISMISS PLAINTIFF'S NEGLIGENCE AND NYSCRL CLAIMS

Plaintiff cannot premise a claim of common law negligence on a disability access violation as a matter of law.  *See Francis v. Lo-Do Corp.*, No. 14-cv-5422, 2014 WL 7180091, at *1 (S.D.N.Y. Dec. 5, 2014) (rejecting negligence claim based upon the same facts and allegations as statutory ADA claim and with no facts elicited to establish separate common law duty); *see also Thomas v. Ariel West*, 242 F. Supp. 3d 293, 305 (S.D.N.Y. 2017) (finding that the plaintiff may not establish a common-law negligence claim based purely on an alleged noncompliance with federal and New York state disability access statutory requirements); *Lugo v. St. Nicholas Assoc.*, 772 N.Y.S.2d 449, 444-45 (N.Y. Sup. Ct. N.Y. Cnty. 2003) ("if mere proof of a violation of the ADA were to establish negligence per se, [then plaintiffs] would effectively be afforded a private right of action that the ADA did not recognize.").  This claim is frivolous and should be dismissed with prejudice.

In addition, Plaintiff cannot file a claim under the NYSCRL without first providing notice to the Attorney General.  N.Y. Civ. Rights Law § 40–d.  Plaintiff has not produced *any documents* in discovery, including proof of this notice.  (56.1 Stmt., ¶ 189.)  Accordingly, this claim should also be dismissed with prejudice.  *Sundaram v. Brookhaven Nat'l Labs.*, 424 F. Supp. 2d 545, 571 (E.D.N.Y. 2006) (granting summary judgment where plaintiff failed to produce required notice for NYSCRL claim), citing *Silver v. Equitable Life Assur. Soc. of U.S.*, 168 A.D.2d 367, 368 (1st Dep't 1990).

## VI.  THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING CLAIMS

The Court should dismiss all of Plaintiff's claims for injunctive relief for the reasons set forth above.  What remains is Plaintiff's claim for damages under the NYSHRL and NYCHRL. (Compl., ¶¶ 64, 80.)  This action has been pending for more than two years.  The parties have attended two conferences before the Court, conducted a joint expert inspection, exchanged disclosures from 4 expert witnesses, and conducted 11 fact and expert depositions.  (56.1 Stmt., ¶ 186.)  Considerations of judicial economy, convenience, and fairness to the litigants weigh in favor of the Court exercising supplemental jurisdiction over the remaining state and city law claims. *Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101, 105-06 (2d Cir. 1998); *Grenier v. Stamford Hosp. Stamford Health Sys., Inc.*, No. 3:14-cv-0970, 2017 WL 2259765, at *3-4 (D. Conn. May 23, 2017).  Defendants respectfully request that the Court exercise supplemental jurisdiction over these remaining claims, rather than dismissing them without prejudice to be re-filed in state court.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment, and enter an Order: (1) dismissing the ADA claim in its entirety; (2) dismissing the NYSCRL and negligence claims in their entirety; (3) dismissing the claims for injunctive relief under the NYSHRL and NYCHRL; and (4) exercising supplemental jurisdiction over the remaining claims under the NYSHRL and NYCHRL for damages, pursuant to 28 U.S.C. § 1367(c).

Dated: New York, New York
       February 7, 2020

SEYFARTH SHAW LLP


By:  */s/ John W. Egan*
       John W. Egan
       Paul H. Galligan
       Samuel Sverdlov
       jegan@seyfarth.com
       pgalligan@seyfarth.com
       ssverdlov@seyfarth.com
       620 Eighth Avenue, 32nd Floor
       New York, New York  10018
       (212) 218-5500

       *Attorneys for Defendant*
       *230 West 41st Street LLC*

LITCHFIELD CAVO LLP


By:  */s/ Angela M. Objay-Stenroos*
       Angela M. Objay-Stenroos
       stenroos@litchfieldcavo.com
       420 Lexington Avenue, Suite 2014
       New York, New York  10170
       (212) 434-0105

       *Attorneys for Defendant*
       *Hat Trick Pizza, Inc.*

21