UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

KING RANGE,

                        Plaintiff,

            -against-

230 WEST 41ST STREET LLC, HAT TRICK
PIZZA, INC., DOMINO'S PIZZA LLC AND
DOMINO'S PIZZA FRANCHISING LLC

                        Defendants.
-------------------------------------------------------------x

**Docket No. 1:17-cv-00149
(LAP)**


**PLAINTIFF'S
MEMORANDUM OF LAW
IN OPPOSITION**

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' <u>MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

**PAGE**

**PRELIMINARY STATEMENT**                                         **1**

**STATEMENT OF FACTS**                                            **2**

**ARGUMENT**                                                      **3**

**POINT I**                                                       **3**

**DEFENDANTS ARE REQUIRED TO REMEDIATE
INACCESSIBILITY UNDER BOTH THE ADA'S ALTERATION
STANDARD AND THE NEW YORK CITY HUMAN RIGHTS LAW**

**POINT II**                                                      **11**

**DEFENDANTS ARE ALSO OBLIGATED TO REMEDIATE
INACCESSIBILITY UNDER THE ADA'S READILY
ACHIEVABLE STANDARD**

**CONCLUSION**                                                    **20**

## TABLE OF AUTHORITIES

**CASES**                                                                                        **PAGE(S)**

*Albunio v. City of New York*, 16 N.Y.3d 472, 947 N.E.2d 135, 922          6
N.Y.S.2d 244 (2011)

*Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131 (2nd Cir. 1995)         11-14, 20

*Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127 (2d Cir. 2008)               5

*Brown v. Cnty. of Nassau*, 736 F. Supp. 2d 602 (E.D.N.Y. 2010)            5, 11

*Celeste v. East Meadow Union Free School District*, 373 Fed.Appx.          13
85, 2010 WL 1572296 (2nd Cir. April 21, 2010)

*Colorado Cross Disability Coalition v. Hermanson Family Ltd.*              12
*Partnership I*, 264 F.3d 999 (10th Cir. 2001)

*Davis v. John S. Ciborwski Family Trust*, 2013 WL 1410007 (D.N.H.          10
April 8, 2013)

*de la Rosa v. 597 Broadway Dev. Corp.*, 2015 WL 7351540 (S.D.N.Y.          3, 5, 7, 8
Aug. 4, 2015), report and recommendation adopted in part, 2015 WL
7308661 (S.D.N.Y. Nov. 19, 2015)

*Fowler v. Kanawha Valley Fine Jewelry*, 2015 WL 164096                     19
(S.D.W.Va. Jan. 13, 2015)

*Fox v. Morreale Hotels, LLC*, 2011 WL 5439789 (D.Colo. Nov. 9,             8
2011)

*Gathright–Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269 (11th        12
Cir. 2006)

*In re Matter of John Rose v. Co-op City of New York d/b/a Riverbay*        4
*Corp. And Vernon Cooper*, 2010 WL 8625897 (N.Y.C. Comm. Hum.
Rts. Nov. 18, 2010), aff'd sub nom. *Riverbay Corp. v. New York City*
*Commn. on Human Rights*, 2011 N.Y. Misc. Lexis 7105 (Sup.Ct.Bx.
Cty., Sept. 9, 2011)

*Jacobsen v. New York City Health and Hospitals Corp.,* 22 N.Y.3d          4
824, 11 N.E.3d 159, 988 N.Y.S.2d 86 (2014)

*Kane v. Carmel School Dist.,* 2014 WL 7389438 (S.D.N.Y. Dec. 15, 2014) — 20

*Kreisler v. Humane Society of New York*, 2018 WL 4778914 (S.D.N.Y. Oct. 3, 2018) — 16

*Kreisler v. Second Avenue Diner Corp.*, 2012 WL 3961304 (S.D.N.Y. Sept. 11, 2012) — 15, 19

*Kreisler v. Second Avenue Diner,* 731 F.3d 184 (2nd Cir. 2013) — 15

*Liana Carrier Ltd. v. Pure Biofuels Corp.*, 2015 WL 10793422 (S.D.N.Y. Aug. 14, 2015) — 13

*Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009) — 3, 4

*Marine Holdings, LLC v New York City Commission on Human Rights*, 31 N.Y.3d 1045, 100 N.E.3d 849, 76 N.Y.S.3d 510 (2018) — 4, 5

*Marradi v. Galway House, Inc.*, 2014 WL 1454266 (D.Mass. Apr. 15, 2014) — 12

*Nande v. JP Morgan Chase & Co.,* 17 Misc.3d 1103(A) (Sup. Ct. N.Y. Cty. 2007) *affd. on other grounds* 57 A.D.3d 318 (1st Dept. 2008) — 5

*Panzica v. Maz-Maz, Inc.*, 2007 WL 1732123 (E.D.N.Y. June 11, 2007) — 12

*Pascuiti v. New York Yankees*, 1999 WL 1102748 (S.D.N.Y. Dec. 6, 1999) — 12

*Phillips v. City of New York*, 66 A.D.3d 170, 884 N.Y.S.2d 369 (1st Dept. 2009) — 3

*Roberman v Alamo Drafthouse Cinemas Holdings, LLC*, 2020 WL 253372  (Sup Ct, Jan. 13, 2020) — 4

*Roberts v. Royal Atlantic,* 542 F.3d 363 (2nd Cir. 2008) — 6, 7, 9, 10, 12, 13, 17, and 19

*Rosa v. 600 Broadway Partners, LLC*, 175 F.Supp.3d 191 (S.D.N.Y. 2016) — 9

*Tatum v. Doctor's Associates, Inc.*, 2016 WL 852458 (E.D. Lou. March 4, 2016)                                                                                    9

*Thomas v. Kohl's Corporation*, 2018 WL 704691 (N.D.Ill. Feb. 5, 2018)                                                                                              11

*Wilson v. Pier 1 Imports (US), Inc.*, 439 F. Supp. 2d 1054 (E.D. Cal. 2006)                                                                                         11

**STATUTES AND REGULATIONS**                                         **PAGE(S)**

§4.1.6(1)(a) of 1991 ADA Standards for Accessible Design ("1991 Standards")                                                                                        8

§202.3.1 of 2010 ADA Standards for Accessible Design ("2010 Standards")                                                                                            8

28 C.F.R. § 36.304(e)                                                                    19

28 C.F.R. § 36.402(b)(1)                                                                  7

28 C.F.R. § 36.211(a)                                                                     9

42 U.S.C. § 12181(9)                                                                     11

42 U.S.C. § 12182(b)(2)(A)(iv)                                                           11

42 U.S.C. § 12183(a)(2)                                                                   6

42 U.S.C. §12201(b)                                                                       3

Administrative Code of the City of New York ("N.Y.C. Admin. Code") § 8–107(4)(a)(1)(a)                                                                             3

Administrative Code of the City of New York ("N.Y.C. Admin. Code") § 8-102(18)                                                                                     4

## PRELIMINARY STATEMENT

Before this litigation, the Defendants closed off a second entrance to the Domino's by putting up a sheetrock wall blocking this entrance.  This second entrance to the Domino's pizza store at 227 West 40th Street (hereinafter referred to as "Domino's") can still be accessed via the adjacent lobby entrance to the building at 219 West 40th Street (hereinafter referred to as "Building").  And there are no steps to prevent a wheelchair user from traveling from the public sidewalk through the Building lobby and into this second entrance.  In fact, the door and door frame to the second entrance still exists on the lobby side.  Defendants therefore brought this injury upon themselves as they performed an alteration that eliminated an entrance that could have been utilized as a wheelchair accessible entrance.

Even worse, when this case first began, Defendants **made a promise** to the Court that they would install a wheelchair accessible entrance at Domino's.  See ECF Document # 45, Order of Nov. 20, 2017, "landlord has agreed to install a compliant accessibility mode.").  Defendants' architect and engineer investigated and then created feasible plans for a wheelchair accessible entrance.  Only after Defendants received estimates that the cost of implementing the plans would be around $199,000 did the Defendants then make a purely financial decision to **break their promise** to the Court and refuse to go forward with an accessible entrance.  Put more plainly, the Defendants believe that disabled customers are not worth $199,000.

But Defendants have millions of dollars available to fund the construction of a wheelchair accessible entrance.  The landlord defendant itself admits that it has over $17 million available to pay for a wheelchair accessible entrance.  REDACTED PENDING APPLICATION FOR FILING UNDER SEAL

1

What is more, wheelchair accessible entrances have been created at the sidewalk entrances at each adjacent side in the same Building.  Specifically, the Building lobby entrance adjacent to Domino's used to have a step but the step was removed by raising the sidewalk to the lobby entrance level.  The retail space adjacent to Domino's has an entrance level with the public sidewalk and installed a wheelchair lift at its entrance (similar to the Defendants' lift proposal).

Accordingly, Plaintiff submits this Memorandum of Law in opposition to the Defendants 230 West 41st Street LLC and Hat Trick Pizza, Inc. (hereinafter referred to as the "Defendants") motion for summary judgment.  As explained herein, Defendants' motion must be denied because there are more than sufficient facts from which a reasonable jury could find that the Defendants performed ADA qualifying alterations to the Domino's entrances; that it was not "virtually impossible" for the Defendants to have made the entrance(s) accessible at the time the alterations were made; and, even if no alterations occurred, it is readily achievable for the Defendants to implement the proposals for the creation of an accessible entrance inclusive of the plans created by the Defendants' professionals who testified that implementing their plans was feasible and ready to be filed with the Department of Buildings.

**Plaintiff withdraws his claims for Negligence and for violations of the New York State Civil Rights Law.**

<u>**STATEMENT OF FACTS**</u>

Plaintiff respectfully refers this Honorable Court to the Declaration of Glen H. Parker, Esq. ("Parker Dec."), Declaration of King Range Jr. ("Range Dec."), and Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("Defendants' Statement") for a recitation of the facts relevant to this motion.

**ARGUMENT**

**POINT I**

**DEFENDANTS ARE REQUIRED TO REMEDIATE INACCESSIBILITY
UNDER BOTH THE ADA'S ALTERATION STANDARD AND
THE NEW YORK CITY HUMAN RIGHTS LAW**

Here, Plaintiff asserts claims for discrimination under the New York City Human Rights

Law ("NYCHRL") and the ADA's alteration standard. Both laws apply a similar standard for

determining whether a public accommodation must remediate inaccessible conditions. *See de la*

*Rosa v. 597 Broadway Dev. Corp.*, 2015 WL 7351540, at *20 (S.D.N.Y. Aug. 4, 2015), report

and recommendation adopted in part, 2015 WL 7308661 (S.D.N.Y. Nov. 19, 2015) ("the

pertinent test of virtual impossibility [from the ADA's alteration standard] is at least a reasonable

surrogate for the question of infeasibility [under the NYCHRL]".).

**NYCHRL**

The ADA does not preempt state or local laws that provide greater rights and remedies to

the disabled. See 42 U.S.C. §12201(b).  Under the NYCHRL, it is discrimination for a "public

accommodation ... directly or indirectly [t]o refuse, withhold from or deny to such [disabled]

person the full and equal enjoyment, on equal terms and conditions, of any of the

accommodations, advantages, services, facilities or privileges of the place or provider of public

accommodation." N.Y.C. Admin. Code § 8–107(4)(a)(1)(a).  The NYCHRL imposes far greater

obligations to remediate inaccessibility than what is required under the ADA. *Phillips v. City of*

*New York*, 66 A.D.3d 170, 884 N.Y.S.2d 369, 378 (1ˢᵗ Dept. 2009) ("And unlike the ADA, there

are no accommodations that may be 'unreasonable' if they do not cause undue hardship.").  The

Second Circuit has held that the NYCHRL is to be construed more liberally than the ADA to

accomplish its uniquely broad and remedial purposes. *See Loeffler v. Staten Island Univ. Hosp.*,

582 F.3d 268, 278 (2d Cir. 2009) (confirming legislative intent to abolish "parallelism" between the NYCHRL and the ADA and now the NYCHRL must be reviewed "independently from and more liberally" than the ADA)[1].

With regard to architectural barriers, the NYCHRL requires the Defendants to remediate inaccessible conditions, regardless of whether their Building was newly constructed or altered, unless Defendants prove that doing so would be an undue hardship or is architecturally infeasible. *See In re Matter of John Rose v. Co-op City of New York d/b/a Riverbay Corp. and Vernon Cooper*, 2010 WL 8625897, at *2 (N.Y.C. Comm. Hum. Rts. Nov. 18, 2010), aff'd sub nom. *Riverbay Corp. v. New York City Commn. on Human Rights,* 2011 N.Y. Misc. Lexis 7105 (Sup.Ct.Bx. Cty., Sept. 9, 2011) (NYCHRL requires public accommodations to "make the main entrance to a building accessible unless doing so creates an undue hardship, or is architecturally infeasible.").  What is more, Defendants always has the burden of proving undue hardship and this burden of proof never shifts to the Plaintiff to rebut.  *See Jacobsen v. New York City Health and Hospitals Corp.,* 22 N.Y.3d 824, 835, 11 N.E.3d 159, 988 N.Y.S.2d 86 (2014); and N.Y.C. Admin. Code § 8-102(18) ("undue hardship" is an affirmative defense).

The New York Court of Appeals recently upheld the expansive scope of the NYCHRL's requirement to construct a wheelchair accessible entrance in the decision of *Marine Holdings, LLC v New York City Commission on Human Rights*, 31 N.Y.3d 1045, 100 N.E.3d 849, 76 N.Y.S.3d 510 (2018).   Directly on point to the issue in this case, the issue in *Marine Holdings* was whether it was undue hardship for a landlord to perform substantial structural renovations

---

[1] Per the Second Circuit Court of Appeals in *Loeffler* and contrary to Defendants' citation to the New York State trial court decision of *Roberman v Alamo Drafthouse Cinemas Holdings, LLC*, 2020 WL 253372, at *2 (Sup Ct, Jan. 13, 2020), claims for disability discrimination arising under the NYCHRL are **not** governed by the same legal standards as federal ADA claims.

that included demolishing a building's exterior wall and window and then constructing a new accessible entrance ramp and doorway into the building. *Id.* at 511.  The New York Court of Appeals found that the New York City Human Rights Commission "could rationally conclude that petitioners failed to carry their burden of proving that the proposed accommodation would cause undue hardship in the conduct of their business." *Id.* at 512.

Because Defendants know and should reasonably know that wheelchair users also desire to patronize Domino's, the Defendants have an affirmative obligation to make their premises accessible without a specific request for an accessible entrance.  *Nande v. JP Morgan Chase & Co.,* 17 Misc.3d 1103(A) (Sup. Ct. N.Y. Cty. 2007) *affd. on other grounds* 57 A.D.3d 318 (1st Dept. 2008) ("under [the NYCRHL] an employer has a duty to offer an accommodation to a disabled employee, even absent a request for one").  A wheelchair user's need for an accessible entrance is obvious and so the absence of an express "request" is not fatal to a claim under the ADA, let alone, the more expansive NYCHRL. *See, e.g., Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127 (2d Cir. 2008) (duty to provide disability accommodations if it knew or reasonably should have known that the employee had a disability); and *Brown v. Cty. of Nassau*, 736 F. Supp. 2d 602, 618–19 (E.D.N.Y. 2010) (citing cases for the proposition that "it is well-settled that a request for an accommodation is not required where the disabled individuals need for accommodation is obvious.").

Plaintiff has articulated proposals for an accessible entrance.  See Range Dec., paragraph 7.  Applying the NYCHRL to the facts means that the entrance to Domino's must be made accessible unless the Defendants prove that each proposal creates an undue hardship upon them or is architecturally infeasible. *de la Rosa v. 597 Broadway Dev. Corp.*, *supra*, 2015 WL 7351540, at *20 (denying summary judgment to creating accessibility via a platform lift because

"defendants have not shown beyond triable dispute that such a proposal is architecturally infeasible.")  What doom's Defendants' motion is that their own professionals testified that their plans for a wheelchair lift is feasible and ready to be filed with the Department of Buildings. See Parker Dec., Ex. "6", p. 17 and 23; and Ex. "7", p. 29.  Defendants consequently fail to satisfy their burden that plaintiff's proposals are an undue hardship or architecturally infeasible. *Albunio v. City of New York*, 16 N.Y.3d 472, 947 N.E.2d 135, 922 N.Y.S.2d 244, 246 (2011) (NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible").

## THE ADA'S ALTERATION STANDARD APPLIES TO THE ENTRANCE

The ADA's alteration standard applies because Defendants admit to performing extensive "remodeling" to Domino's and that "the entire storefront was replaced". See Parker Dec., Ex. "1" p. 64-65; and Defendants' Statement, paragraph 40.  Under the ADA's alteration standard, discrimination occurs when the areas altered by the Defendants are not made readily accessible to and usable by individuals with disabilities to the maximum extent feasible. See 42 U.S.C. § 12183(a)(2).  An alteration is a change that affects or could affect the usability of a facility, or any part thereof. *Id.*  And usability is read broadly and expansively to include any change that affects the usability of the facility, and not simply changes that relate directly to access by individuals with disabilities. *Roberts v. Royal Atlantic*, 542 F.3d 363, 369 (2nd Cir. 2008).

In *Roberts v. Royal Atlantic*, the Second Circuit Court of Appeals articulated the applicable burdens of proof for the alteration standard as follows:

> to establish the existence of an alteration [that a particular modification is an alteration], a plaintiff fulfills his or her initial burden of production by identifying a modification to a facility and by making a facially plausible demonstration that the modification is an alteration under the ADA. The defendant then bears the burden of persuasion to establish that the modification is in fact not an alteration.

*Id.* at 371.  The implementing regulations provide illustrations of what constitutes an alteration under the ADA: "remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions." See 28 C.F.R. § 36.402(b)(1).

Here, the evidence contradicts Defendants' claim that no alterations occurred to the entrance.  Defendants admit to replacing "the entire storefront" of Domino's and putting in "a new storefront".  See Parker Dec., Ex. "1", p. 65, lines 11-15.  Specifically, Defendants changed every aspect of the Domino's entrance by removing double doors and installing a new and wider single door; and installing "new glass, new bronze, new framing for the glass". *Id.* at p. 64-65.

Several years after altering the entire storefront entrance, Defendants again performed alterations to the entrance when they "remodeled" the entire store because it was ten years old and the franchisor required a remodeling. See Parker Dec., Ex. "1" p. 68, lines 2-11. Defendants' remodeling included changing the tile floor surface of the entrance via the installation of diamond plated steel on top of the floor tile as the new flooring surface for the entrance; changing the storefront laminate countertops housing the radiators; as well as changing the exterior store signage. *Id.* at p. 95-101.  Defendants admit that this installation of the diamond steel plate flooring was an improvement over the entrance that existed previously and, by so doing, admit to performing an ADA qualifying alteration to the entrance. *Id.* at p. 98, lines 12-19. *Roberts v. Royal Atlantic*, *supra*, 542 F.3d 363, 370 (modifications are ADA qualifying alterations when the reason for the modification is for improvement).

Independent of the alterations above, Defendants made a separate ADA qualifying alteration when they eliminated and closed off a second entrance to Domino's that could have been utilized as an accessible entrance. *de la Rosa v. 597 Broadway Dev. Corp.*, *supra*, 2015 WL

7351540, at *9-10 (finding that the closing off of a party wall entrance to a store was an alteration). See paragraphs 29 and 30 of Defendants' Statement wherein Defendants' admit that "when Hat Trick took possession of the Property in 2002, there was a door connecting the Le Croissant shop to the adjacent Building lobby" and "as part of the 2002 build-out, Hat Trick patched the opening of the door with sheetrock."

This second entrance was level with the adjacent Building lobby and a wheelchair user could travel through the adjacent Building lobby to and from the public sidewalk next to Domino's without encountering any steps.  See Parker Dec., Ex. "3", p. 41 to 43. But Defendants sealed up the Domino's side of the door with sheetrock and thus eliminated a second entrance. *Id.*  In fact, the door and door frame to this second entrance still exists at/on the Building lobby side of the entrance. *Id.* at p. 44 to 48.

Defendants' elimination of the second entrance constitutes a violation of the ADA's alteration standard. The ADA prohibits an alteration that decreases the wheelchair usability of a space. See § 4.1.6(1)(a) of the 1991 Standards; and § 202.3.1 of the 2010 Standards.  By eliminating and closing off a second entrance that could have been utilized to provide an accessible entrance, Defendants engaged in an alteration that decreased and/or had the effect of decreasing accessibility to the Domino's store. *See Fox v. Morreale Hotels*, *LLC*, 2011 WL 5439789, at *1 (D.Colo. Nov. 9, 2011) (holding that restaurant defendant violated § 4.1.6(1)(a) when the restaurant altered a flat accessible floor by creating a raised dining platform on the formerly level floor); and *de la Rosa v. 597 Broadway Dev. Corp.*, *supra*, 2015 WL 7351540, at *10 ("defendant appears to argue that the [side entrance] closure cannot be an alteration, or at least not one that compels an accommodation at the entrance to the store, because the pertinent test looks only to the element altered—in this case the party wall—and hence any

8

accommodation (if one were possible) would involve that party wall. (Def. Reply Mem. 10). This analysis is a non-starter.").

Domino's elimination and closing off of a second entrance also violated the ADA, at 28 C.F.R. § 36.211(a), by failing to comply with its continuing obligation to maintain "in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities."

In addition, while Domino's was a tenant, the entire sidewalk was replaced including the sidewalk connecting to the Domino's entrance and the Building. See Parker Dec., Ex. "3" p. 25 and 61. A sidewalk step was removed from the Building lobby entrance immediately adjacent to the Domino's entrance. See Defendant's Statement, paragraphs 31 and 32; and Parker Dec., Ex. "2", p. 38.  This adjacent lobby entrance is now level with the public sidewalk and the public sidewalk adjacent to the Domino's entrance is raised to be level with the lobby entrance.  *Id.*

All these modifications, collectively and individually, qualify as alterations to the Domino's entrances under the ADA.  *Roberts v. Royal Atlantic*, *supra*, 542 F.3d at 369 ("Even a relatively inexpensive or localized modification may, however, so fundamentally change the use of a facility that we would regard it as an alteration, particularly if it affects the purpose, function, or underlying structure of the facility."); and *Rosa v. 600 Broadway Partners, LLC*, 175 F.Supp.3d 191, 206-208 (S.D.N.Y. 2016) (the Court found that the defendants' interior and exterior construction work performed to create a retail store "falls squarely within the ADAAG's definition of alteration, which includes 'changes or rearrangement in structural parts or elements.").  Because Defendants altered both entrances, they were obligated to make the entire altered areas compliant with the ADA under the alteration standard. *Tatum v. Doctor's Associates, Inc.*, 2016 WL 852458, at *4-5 (E.D. Lou. March 4, 2016) ("Defendant altered the

entire parking space by changing its use from general parking to handicap-accessible parking, meaning that all aspects of the parking space must comply with the ADA. [Defendant's] argument that only the paint need comply with the ADA is frivolous."); and *Davis v. John S. Ciborwski Family Trust*, 2013 WL 1410007, at *4 (D.N.H. April 8, 2013) (holding that the defendant's modifications were qualifying alterations since they could have affected usability and could have been done differently in an accessible manner).

The cost to make the entrances accessible is not a consideration under the ADA's alteration standard. *Roberts v. Royal Atlantic*, *supra*, 542 F.3d at 371-372 ("The statute and regulations require that such facilities be made accessible even if the cost of doing so-financial or otherwise-is high. Indeed, in promulgating the implementing regulations, the Department explicitly rejected suggestions that cost be considered with respect to this provision.").  The only excuse for not making the altered areas accessible was if Defendants prove that it was "virtually impossible to comply fully".  *Id.*

The alteration standard "is backward-looking. It asks whether, at the time the [ ] renovations were performed, the defendants had made maximally feasible efforts to achieve the requisite level of accessibility."). *Id.* at 375.   Defendants have not adduced prove that, at the time of the alterations, it was "virtually impossible" to have achieved a wheelchair accessible entrance to Domino's via any of the Plaintiff's proposals. See Range Dec., paragraph 7.  For example, Defendants could have kept the second entrance open and available to mobility impaired customers or created a ramped entrance.  Or, as Defendants' architect and engineer admit, a platform lift is the most "cost-effective" solution and architectural plans have been drafted to effectuate the installation. See Parker Dec., Ex. "6", p. 17 and 23; and Ex. "7", p. 29. But Defendants refused to install a lift because they deem the disabled as not worth the $199,000

cost. See paragraphs 17 and 18 of Cookson Dec. Yet we can be sure that money would be no object if the front entrance suddenly became inaccessible to able-bodied persons.  Accordingly, Defendants violated the ADA because they failed to make any effort, let alone maximum feasible efforts, to make the altered areas accessible.

## POINT II

### DEFENDANTS ARE ALSO OBLIGATED TO REMEDIATE INACCESSIBILITY UNDER THE ADA'S READILY ACHIEVABLE STANDARD

Even if no questions of fact exist concerning Defendants' violation of the accessibility obligations imposed by the ADA's Alteration standard or the NYCHRL, Defendants still violate the ADA under the readily achievable standard. See 42 U.S.C.A. § 12182(b)(2)(A)(iv) (disability discrimination includes "a failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable).  The defense of not readily achievable requires a highly factual analysis of the factors listed in 42 U.S.C. § 12181(9).

Determining whether accessibility remediation is readily achievable "involves a 'fact intensive inquiry that will **rarely be decided on summary judgment**.' " *Thomas v. Kohl's Corporation*, 2018 WL 704691, at *4 (N.D.Ill. Feb. 5, 2018) quoting *Wilson v. Pier 1 Imports (US), Inc.*, 439 F. Supp. 2d 1054, 1067 (E.D. Cal. 2006) (emphasis added); *see also Brown v. Cnty. of Nassau*, 736 F. Supp. 2d 602, 622 (E.D.N.Y. 2010).

The Second Circuit Court of Appeals has held that the standard used in *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 137–138 (2nd Cir. 1995) is applicable for readily achievable.

*See Roberts v. Royal Atlantic*, *supra,* 542 F.3d at 368[2].  The *Borkowski* analysis requires:

> a plaintiff to articulate a plausible proposal for barrier removal, the costs of which, facially, do not clearly exceed its benefits." *Borkowski,* 63 F.3d at 138. Neither the estimates nor the proposal are required to be exact or detailed, for the defendant may counter the plaintiff's showing by meeting its own burden of persuasion and establishing that the costs of a plaintiff's proposal would in fact exceed the benefits. Because the concept of "readily achievable" is a broad one, either party may include in its analysis, as costs or benefits, both monetary and non-monetary considerations.

*Id.* And per *Borkowski*, summary judgment is only appropriate when "the plaintiff's proposal is either clearly ineffective or outlandishly costly." *Borkowski v. Valley Cent. Sch. Dist.*, *supra*, 63 F.3d at 139.

Here, Plaintiff articulates plausible proposals for Defendants to remediate their entrance barrier with the following proposals:

> 1) restoring the second store entrance from the Building lobby by removing the sheetrock wall that Defendants put up to block the second entrance;
> 2) installation of a platform lift per Defendants' architect and engineer plans and contractor bids;
> 3) install a ramp from the interior first step into the store per Domino's architectural plans for the 2014-2015 remodeling and remediate the step adjacent to the sidewalk via a platform lift or raising the level of the sidewalk;
> 4) install a ramp from the sidewalk into the store per Plaintiff's architect plans; or
> 5) raise the sidewalk to the level of the store in the same manner that was done to remediate the step at the adjacent Building lobby entrance where the sidewalk was raised to the level with the lobby entrance.

---

[2] Defendants utilize the wrong standard for readily achievable by citing to: *Panzica v. Maz-Maz, Inc.*, 2007 WL 1732123 (E.D.N.Y. June 11, 2007) (utilized the readily achievable standard reversed by the Second Circuit in *Roberts v. Royal Atlantic); Pascuiti v. New York Yankees*, 1999 WL 1102748, at *4 (S.D.N.Y. Dec. 6, 1999) (pre-*Roberts* decision and inconsistent with the standard in *Roberts*); and *Marradi v. Galway House, Inc.*, 2014 WL 1454266, at *4 (D.Mass. Apr. 15, 2014) (relying on the readily achievable standard rejected by *Roberts* (in fn. 6) by citing to the standard articulated in *Gathright–Dietrich v. Atlanta Landmarks, Inc.,* 452 F.3d 1269, 1273 (11th Cir. 2006), which used the standard from *Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership I*, 264 F.3d 999 (10th Cir. 2001) that *Roberts* rejected.

See Range Dec., paragraph 7.

In another ADA architectural barrier case applying the same burden, the Second Circuit held that the plaintiff's initial burden is "not a heavy one".  *See Celeste v. East Meadow Union Free School District*, 373 Fed.Appx. 85, 2010 WL 1572296, at *2 (2nd Cir. April 21, 2010)[3]. The plaintiff in *Celeste* met his burden at trial when he answered questions stating that he would like curb cuts installed, pavement fixed and other accessibility modifications.  *Id.* at *2 ("[plaintiff] offered plausible, simple remedies, which are de minimis compared with the corresponding benefits by way of access achieved.").

A plaintiff need not present expert testimony to identify all the remedies to the inaccessible features of a public accommodation. *Id.* at * 1 and *2.  In fact, the plaintiff in *Celeste* did not submit any expert testimony or design plans to support his claim for defendant to remediate specific inaccessible conditions. *Id.*  Like the plaintiff in the *Celeste* case, Plaintiff here has offered plausible remedies, which are *de minimis* compared to the corresponding benefits by way of access achieved.

In *Roberts*, the Second Circuit explained that when plaintiff satisfies his burden, the burden shifts to the defendant "to refute a plaintiff's proposal as unreasonable". *Roberts v. Royal Atlantic, supra*, 542 F.3d at 371. The Court in *Borkowski* explained that defendant's burden of persuading the factfinder that plaintiff's proposals are "unreasonable" amounts to proving that plaintiff's proposals are an undue hardship. *Borkowski v. Valley Cent. Sch. Dist.*, *supra,* 63 F.3d at 138 ("the defendant's burden of persuading the factfinder that the plaintiff's proposed

---

[3] "Courts in the Second Circuit have often noted that unpublished opinions and Summary Orders from the Second Circuit Court of Appeals, while not binding, can be instructive to district courts in resolving particular disputes, and also may be seen as highly persuasive and predictive of how the Second Circuit Court of Appeals would decide an issue in the future." *Liana Carrier Ltd. v. Pure Biofuels Corp.*, 2015 WL 10793422, at *4 (S.D.N.Y. Aug. 14, 2015).

accommodation is unreasonable merges, in effect, with its burden of showing, as an affirmative defense, that the proposed accommodation would cause it to suffer an undue hardship. For in practice meeting the burden of nonpersuasion on the reasonableness of the accommodation and demonstrating that the accommodation imposes an undue hardship amount to the same thing."). And, per *Borkowski,* to prove undue hardship, a defendant must perform a "refined" cost-benefit analysis by analyzing statutory factors defining undue hardship under the ADA. *Id.* at 139. Defendants utterly fail to satisfy their burden of refuting Plaintiff's proposals as unreasonable because Defendants' witnesses all admit that they did not perform any cost-benefit analysis, let alone a refined analysis as required to satisfy their burden under *Borkowski.* See Parker Dec., Ex. "7", p. 29, line 25 to page 30, line 12; Ex. "1", p. 104-105; and Ex. "2", p. 79-80.

Plaintiff's most cost-effective proposal is to restore the second entrance from the Building lobby by tearing down the sheetrock wall that Defendants put up to block the second entrance. See Range Dec., paragraph 7. This lobby door entrance to Domino's was level with the adjacent Building lobby and a wheelchair user can today independently travel through the adjacent Building lobby to and from the public sidewalk next to the Property without encountering any steps. See Parker Dec., Ex. "3" p. 41 to 43. In fact, the door and door frame to this entrance from the adjacent Building lobby still exists today as Defendant Hat Trick just sealed up their side of the door with sheetrock. *Id.* at p. 44 to 48. The interior of Domino's has no steps and so a wheelchair user can travel inside the store independently. See Parker Dec., Ex. "1" p. 110-111.

Plaintiff only learned of this second entrance and its blockade by Defendants when plaintiff deposed the Chief Engineer for the Building on December 3, 2019, which was after the parties made their expert disclosures and six days before the close of discovery on December 9,

2019. See Parker Dec., Ex. "3" p. 1 & p 41 to 48.  Restoring the second entrance will not require

Domino's to shut down as the main sidewalk entrance can remain open.  The cost and

construction to restore the second entrance is *de minimis* compared to the corresponding benefits

by way of access achieved.

Defendants' professionals testified that they reviewed various options to provide an

accessible entrance and deemed the installation of a lift as the most "cost-effective". See

paragraphs 92 and 101 of Defendants' Statement.  Defendants' professionals also admit that the

architectural plans for the lift proposal are ready to be filed and can be implemented without

further delay.  See Parker Dec., Ex. "6", p. 17 and 23; and Ex. "7", p. 29.   Indeed, Defendants

obtained two bids to perform the work involved to implement the lift proposal with the lowest

competitive bid being $199,000.  See paragraphs 111 to 114 of Defendants' Statement.

But Defendants do not believe that the disabled are worth the money.  See paragraphs 17

and 18 of the Cookson Dec. wherein he states that he was informed that an ADA lift "would cost

at least $199,000" and that "instead, we purchased a portable ramp…".  In *Kreisler v. Second*

*Avenue Diner Corp.*, 2012 WL 3961304, at *8 (S.D.N.Y. Sept. 11, 2012) *affirmed by* 731. F.3d

184 (2nd Cir. 2013), the Court analyzed whether the cost of constructing a wheelchair accessible

entrance ramp was readily achievable by comparing the cost to the Defendants' annual profits.

The Court found that a $12,000 construction cost would be readily achievable based on the

defendants' annual profits of roughly $23,383 (i.e. spending about 51% of money available from

annual profits). *Id.*

In comparison, Defendant 230 West states that it has $17,566,527 available to fund the

installation of a wheelchair accessible entrance. See Parker Dec., Ex. "2" p. 61, lines 3-14 and p.

63, lines 13-19.  Based on the analysis in *Kreisler*, the Court can easily conclude that it is readily

achievable for Defendant 230 West to spend about 1% of its available funds to create an

accessible entrance ($199,000 divided by $17,566,527).  It is also worth noting that Defendant

REDACTED PENDING APPLICATION FOR FILING UNDER SEAL

During this litigation where the disabled Plaintiff is begging Your Honor for a basic

human right, Defendant 230 West has REDACTED PENDING APPLICATION FOR FILING UNDER SEAL

So it is readily

achievable for Defendants, individually and collectively, to spend $199,000 for the benefit of all

mobility impaired persons without suffering dire financial consequences. *See Kreisler v. Humane*

*Society of New York*, 2018 WL 4778914, at *2 and *6 (S.D.N.Y. Oct. 3, 2018) (holding that a

reasonable jury could find as readily achievable a proposal to provide a wheelchair accessible

entrance that was estimated to cost between $200,000 and $300,000 and would involve

reconstructing the building entrance and "invasive construction").

Defendants cannot defeat summary judgment by claiming that Plaintiff did not take into

account other factors with the proposals (e.g. potential noise, closing of Domino's, additional

related costs, relocation of connections etc.) as the Second Circuit in *Roberts* explicitly rejected

16

such a requirement. *Roberts v. Royal Atlantic*, *supra,* 542 F.3d at 378 ("the district court's finding that the plaintiffs had failed to take into account various other factors is of little import, for once the plaintiffs met their initial burden of production, it was the Defendants' responsibility to prove that the proposals were not readily achievable.").  Defendants utterly fail in their responsibility because they performed no analysis whatsoever of the potential noise, the length of possible closure, the amount of additional related costs, or what connections need to be relocated and the feasibility of doing so.  See Parker Dec., Ex. "7", p. 29, line 25 to p. 30, line 12; Ex. "1", p. 104-105; and Ex. "2", p. 79-80.

For example, Defendants' failure to investigate becomes readily apparent when they falsely state that implementing the plans to construct the lift "would require the property… to close for approximately 3 to 4 weeks."  See Paragraphs 183 and 184 of Defendants Statement, which in turn is based on the Declaration of David Weiner.

But the Declaration of David Weiner is a sham to the extent he claims to have personal knowledge as how implementing his plans will impact the Domino's store and their operations. Mr. Weiner created the architectural plans for the installation of the lift, marked as Exhibit "6" during his deposition. See Parker Dec., Ex. "7", p. 15-16.  And Mr. Weiner testified that he <u>did not</u> perform any analysis to the impact upon the Domino's store and their operations from implementing his plans for the installation of the lift. See Parker Dec., Ex. "7", p. 29, line 25 to page 30, line 12.  Nor did Mr. Weiner perform any analysis as to the impact to the Building from implementing his plans for the installation of the lift.  *Id.*

Likewise, the claimed impact on Domino's operations is contradicted by Richard Cookson, the owner/operator of Domino's, who testified that he did not perform any analysis as to what impact, if any, the installation of a wheelchair accessible entrance would have on the

operations of Domino's. See Parker Dec., Ex. "1" p. 105, lines 10 to 14.  Mr. Cookson also testified that he did not perform any cost-benefit analysis into the installation of a wheelchair accessible entrance.  *Id.* at p. 104, line 17 to p. 105, line 9.  Past history proves that Domino's will not suffer negative impacts because Domino's twice performed extensive renovations to their premises without any negative impacts.  *Id.* at p. 45-46. In fact, the Domino's store was closed for three weeks during its "two year" remodeling in 2014-2015 without any of the dire consequences alleged by Defendants (e.g. store closing, employee layoffs etc.). *Id.* at p. 45-46.

The same lack of analysis is true for Defendant 230 West.  No analysis was ever performed as to the structural impact or financial impact to 230 West from the installation of a wheelchair accessible entrance.  See Parker Dec., Ex. "2", p. 79, line 20 to p. 80, line 24.  Nor is 230 West aware of any particular amount of money that it would or would not spend toward the installation of a wheelchair accessible entrance. *Id.* And 230 West spent over $2.2 million on lobby renovations without any negative impacts. See Defendants' Statement, paragraphs 37 and 38.

If anything, past history indicates that it is readily achievable for Defendant 230 West to provide a wheelchair accessible entrance.  In or around 2011, the store adjacent to Domino's in the same Building installed a wheelchair accessible lift at its sidewalk entrance. See Parker Dec., Ex. "3", p. 59-60.  The Defendants' structural engineer testified that the structural work performed for the lift installation at the adjacent store would be similar to the work required for the proposed lift at Domino's.  See Parker Dec., Ex. "6", p. 34-35.  The Chief Engineer for the Building testified that installing the lift at the adjacent store had no effect or impact on the Building. *Id.* at p. 60, lines 7-14.

Given that the store adjacent to Domino's installed a wheelchair accessible lift, 230 West should be able to specify any genuine structural impacts to the Building.  Because a lift has already been installed at the adjacent store in the same Building and over the same floor structure as Domino's, the Court can find that it is readily achievable to install a lift at Domino's. *See e.g. Fowler v. Kanawha Valley Fine Jewelry*, 2015 WL 164096, at * 6 (S.D.W.Va. Jan. 13, 2015) (holding that is not necessary to decide whether installing a ramp is readily achievable when a ramp has already been constructed).

Accordingly, Defendants have failed to meet their burden of persuasion under the readily achievable standard of conducting the investigation needed and presenting genuine impediments to effectuating the proposals. *Roberts v. Royal Atlantic*, *supra*, 542 F.3d at 373, n.6 (rejecting imposing a burden upon "a plaintiff [to] furnish precise cost estimates and specific design details regarding his proposed accommodation. We think that this asks too much of the typical plaintiff, particularly where defendants can so quickly dispose of non-meritorious claims by reference to their knowledge and information regarding their own facilities.").

 Finally, Defendants' use of a portable ramp does not satisfy their obligations under the ADA's readily achievable standard. A portable ramp is only permissible when installation of a permanent ramp or platform lift (in alterations) is not readily achievable.  See 28 C.F.R. § 36.304(e) and *Kreisler v. Second Avenue Diner Corp*., *supra*, 2012 WL 3961304, at *7 (utilizing the readily achievable standard, finding a portable ramp not permitted and directing the public accommodation defendants to apply for a permanent wheelchair accessible ramp).

But even if plaintiff's proposals are not readily achievable, the portable ramp utilized by the Defendants violates the ADA because it lacks critical safety features such as railings and anchoring.  See 28 C.F.R. § 36.304 (e) ("In order to avoid any significant risk to the health or

safety of individuals with disabilities or others in using portable ramps, due consideration shall be given to safety features such as nonslip surfaces, railings, anchoring, and strength of materials.").  There is no dispute that the portable ramp utilized by the Defendants lacks the important safety features of railings and anchoring to secure the portable ramp against sliding or slipping.  See Parker Dec., Ex. "4", p. 101-102.   Indeed, the picture from Paragraph 165 of Defendants' Statement shows how this portable ramp is raised and warped at the point where it meets the sidewalk because this portable ramp does not lay flatly secured to the sidewalk.  *Id.* at p. 105-106.

 In conclusion, the drastic remedy of summary judgment is not appropriate because the Defendants fail to demonstrate as a matter of law that "the plaintiff's proposal is either clearly ineffective or outlandishly costly." *Borkowski v. Valley Cent. Sch. Dist.*, *supra*, 63 F.3d at 139; and *see also Kane v. Carmel School Dist.,* 2014 WL 7389438, at *6 (S.D.N.Y. Dec. 15, 2014) (denying summary judgment because the disabled plaintiff's proposal to modify a front door entrance and provide a raised conductor's podium "appear facially reasonable and plausible and are neither outlandishly costly nor clearly ineffective.").   Accordingly, there is no basis to grant Judgment as a matter of law.

## **CONCLUSION**

Because numerous issues of genuine fact exist, Plaintiff respectfully requests that the Court deny Defendants' motion.

Dated: March 12, 2020
       New York, New York

                                    **PARKER HANSKI LLC**


                        By: _____/s/_____
                             Glen H. Parker, Esq.