UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KING RANGE, JR.,

              Plaintiff,

        -versus-                      No. 17 Civ. 149 (LAP)

230 WEST 41st STREET LLC, HAT              ORDER
TRICK PIZZA, INC., DOMINO'S
PIZZA LLC, and DOMINO'S PIZZA
FRANCHISING LLC

              Defendants.

---

LORETTA A. PRESKA, SENIOR UNITED STATES DISTRICT JUDGE:

        Plaintiff King Range, Jr. brings this action against

Defendants Domino's Pizza LLC, Domino's Pizza Franchising LLC

(together, "Domino's"), 230 West 41st Street LLC ("230 West"),

and Hat Trick Pizza, Inc. ("Hat Trick"), asserting claims for

common law negligence and violations of Title III of the

Americans with Disabilities Act ("ADA"), the New York State

Human Rights Law ("NYSHRL"), the New York City Human Rights Law

("NYSHRL"), and the New York State Civil Rights Law ("NYSCRL").

(See Complaint dated Jan. 9, 2017 ("Compl.") [dkt. no. 1].)  In

his lawsuit, Plaintiff, who uses a wheelchair, challenges the

adequacy of access to a Domino's pizza restaurant Hat Trick

operates in a building owned by 230 West.

        Defendants have all moved for summary judgment.  Hat Trick

and 230 West together seek (i) dismissal with prejudice of the

claims under Title III of the ADA, the NYSCRL, and for common

1

law negligence, and (ii) dismissal of the claims under the
NYSHRL and NYCHRL to the extent they seek injunctive relief.
(See Notice of Motion for Summary Judgment, dated Feb. 7, 2020
[dkt. no. 80].)  Domino's seeks dismissal of all claims against
it with prejudice.  (See Notice of Motion for Summary Judgment,
dated Feb. 7, 2020 [dkt. no. 103].)  For the reasons set forth
below, Hat Trick and 230 West's motion is GRANTED in part and
DENIED in part, and Domino's motion is GRANTED in full.

I.   **BACKGROUND**

**The Property.**  230 West owns a building located on West
40th Street in Manhattan, which it acquired in 2004.
(Plaintiff's Rule 56.1 Counterstatement, dated Mar. 11, 2020
("Pl. 56.1") [dkt. no. 97] ¶ 7.)  On the Building's ground
floor, there is a Domino's pizza shop (the "Store") operated by
Hat Trick.  (Id. ¶ 11.)  The concrete slab of the Store is above
the grade of the sidewalk by about one to two feet, and two non-
wheelchair-accessible steps connect the Store to the sidewalk
outside.  (Id. ¶¶ 19-20.)

Hat Trick became a commercial tenant of 230 West in April
2002, and when it moved into the building, it built out the
Domino's pizza shop.  (Id. ¶ 25.)  This involved erecting a new
storefront with new glass and framing and replacing double doors
at the entrance with a new, wider single door.  (Id. ¶ 28;
Declaration of Glen H. Parker, dated Mar. 11, 2020 [dkt. no.
96], Ex. 1 at 64-65.)  Hat Trick also used sheetrock to patch up

a second door that had previously connected the inside of the Store to the adjacent lobby in the building.  (Pl. 56.1 ¶¶ 29-30.)  When that second entrance was sealed, there was a step between the public sidewalk and the building lobby.  (Id. ¶ 31.)  That step was removed between 2006 and 2008 as part of renovations to the lobby, which is now level with the sidewalk.  (Id. ¶ 32.)  Although the second entrance to the Store is now closed on one side, the door frame previously connecting the Store and lobby still exists today.  (Id. ¶ 30.)

Hat Trick remodeled the Store again in 2014-15 so it would comply with requirements imposed by the Domino's franchisor.  (Id. ¶ 40.)  These renovations involved changing the tile flooring in the customer service area and installing a "diamond plate" surface at the entrance steps to protect the tile's edge.  (Id. ¶ 46.)  Hat Trick also updated the customer seating, changed the laminate on countertops, and installed new exterior signs.  (Id. ¶ 47.)  Although Hat Trick considered installing an interior ramp as part of the 2014-15 renovations, it never implemented the plan.  (Id. ¶¶ 42-43.)  Over the course of its history, Hat Trick had made a few other changes to the Store, including installing new pizza ovens, upgrading employee work stations, modifying décor, lighting, and branding, and making various back-of-house improvements.  (Id. ¶ 50.)

**Role of Domino's Defendants.**  Domino's itself has no role in operating the Store.  Hat Trick's right to use Domino's branding and operate the Store derive from a franchise agreement it entered with Domino's Pizza Franchising LLC.  (Domino's Pizza Rule 56.1 Statement, dated Feb. 7, 2020 ("Domino's 56.1") [dkt. no. 104] ¶ 4.)  Under that agreement, Hat Trick agreed to "operate the Store in full compliance with all applicable laws, regulations and ordinances."  (<u>Id.</u> ¶ 5.)  Domino's has no interest in Hat Trick, plays no role in its day-to-day operations, and does not own, lease, or manage the Store in any way.  (<u>Id.</u> ¶¶ 7-10.)

**Plaintiff's Visit to the Store.**  Plaintiff has had cerebral palsy since birth and uses an electric wheelchair to move around.  (Pl. 56.1 ¶¶ 3-4.)  Sometime in 2016, Plaintiff went to the movies in Times Square and, after the movie ended, traveled to the Store.  (<u>Id.</u> ¶¶ 54-56.)  Upon arriving, he saw the stepped entrance, became upset, and left for a nearby McDonald's.  (<u>Id.</u> ¶¶ 58, 64.)  Plaintiff did not remain outside the Store for more than two minutes.  (<u>Id.</u>)  He did not try to communicate with the Store's employees about the step or to ask them if there was a portable ramp he could use to enter.  (<u>Id.</u> ¶¶ 61-62.)  After his attempted visit, Plaintiff never contacted Defendants about his experience and has never returned to the Store.  (<u>Id.</u> ¶¶ 63-65.)

**Accessibility Proposals.**  In their summary judgment papers, the parties offer several proposals for remediating the Store's stepped front entrance and facilitating wheelchair access. First, Defendants engaged an architect and structural engineer who determined that installing a platform lift would be the most cost-effective and minimally intrusive option.  (Id. ¶¶ 87-93.) The platform lift project would require removing 81 square feet of concrete slab, severing rebar connections, installing steel reinforcements beneath the floor, purchasing and installing the lift, and replacing elements of the storefront entrance.  (See id. ¶¶ 95-108).  The two contractors who placed bids on the platform lift project priced the work at $199,000 and $233,230, which excluded certain expenses, including, among other things, the costs of relocating mechanical, electrical, and plumbing connections in the altered area.  (Id. ¶¶ 113-16.)

Plaintiff also engaged an architect to prepare plans for remediating the front entrance.  (Id. ¶ 119.)  Plaintiff's architect proposed two designs for installing a permanent ramp at the property, both of which would require raising the public sidewalk.  (Id. ¶¶ 123-25.)  Plaintiff's proposals, however, are half-baked at best.  For example, Plaintiff's architect testified that his proposals would involve altering the property's concrete slab, which would require consultation with a structural engineer, but Plaintiff did not engage a structural

engineer in formulating the proposals.  (See id. ¶¶ 129-36;
Declaration of John W. Egan, dated Feb. 7, 2020 [dkt. no. 83],
Ex. I at 19:2-20:4, 75:2-12, 99:5-9.)  Similarly, Plaintiff's
architect did not know if his design would be workable as it
relates to the tenant located next to the Store, and for one of
the proposals, he failed to design the ramp with the required 5-
foot bottom landing.  (Pl. 56.1 ¶¶ 150-53.)  Other than
Plaintiff's architect's testimony that, in his view, it would
not be "ostentatiously expensive" to remediate the Store's front
entrance, Plaintiff failed to provide any estimate of the cost
of implementing his proposals.  (Id. ¶¶ 143-47.)

## II.  **LEGAL STANDARDS**

### a. **Summary Judgment**

Under Rule 56, the "court shall grant summary judgment if
the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law."  Fed. R. Civ. P. 56(a).  "The movant bears the burden
of demonstrating the absence of a genuine dispute of fact, . . .
and, to award summary judgment, the court must be able to find
after drawing all reasonable inferences in favor of a non-movant
that no reasonable trier of fact could find in favor of that
party."  Palmer/Kane LLC v. Rosen Book Works LLC, 204 F. Supp.
3d 565, 568 (S.D.N.Y. 2016) (citation and internal quotation
marks omitted).  A fact is "material" if it "might affect the
outcome of the suit under the governing law."  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the
nonmoving party bears the burden of proof on an issue, "the
moving party may simply point out the absence of evidence to
support the nonmoving party's case."  Nora Beverages, Inc. v.
Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998)
(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

### b. Title III of the ADA and NYSHRL

Title III of the ADA prohibits discrimination "on the basis
of disability in the full and equal enjoyment of the goods,
services, facilities, privileges, advantages, or accommodations
of any place of public accommodation."  42 U.S.C. § 12182(a).
To establish an ADA claim, the plaintiff must prove "(1) that
[he] is disabled within the meaning of the ADA; (2) that
defendants own, lease, or operate a place of public
accommodation; and (3) that defendants discriminated against
[him] by denying [him] a full and equal opportunity to enjoy the
services defendants provide."  Camarillo v. Carrols Corp., 518
F.3d 153, 156 (2d Cir. 2008) (citing 42 U.S.C. § 12182(a)).

This case involves two forms of alleged discrimination
under the ADA.  First, where a "public accommodation" has made
"alterations" to its facility in a way "that affects or could
affect the usability of the facility or part thereof,"
discrimination includes "a failure to make [the] alterations in
such a manner that, to the maximum extent feasible, the altered
portions of the facility are readily accessible to and usable by

individuals with disabilities, including individuals who use wheelchairs." 42 U.S.C. § 12183(a)(2); see also Roberts v. Royal Atl. Corp., 542 F.3d 363, 368 (2d Cir. 2008). Second, discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv); see also Roberts, 542 F.3d at 368–69. Removing an architectural barrier is "readily achievable" under the ADA when it is "easily accomplish[ed] and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).[1]

### c. NYCHRL

The NYCHRL makes it unlawful for proprietors of "public accommodation[s] . . . directly or indirectly [t]o refuse, withhold from or deny to such [disabled] person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation." N.Y.C. Admin. Code § 8-107(4)(a)(1)(a). The NYCHRL requires "any person prohibited by the [law] from discriminating on the basis of disability [to make] reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in

---

[1]   Claims under the NYSHRL are subject to same legal standard imposed by Title III of the ADA. See Rodal v. Anesthesia Grp. of Onondaga, 369 F.3d 113, 117 n.1 (2d Cir. 2004) ("New York State disability discrimination claims are governed by the same legal standards as federal ADA claims.").

question provided that the disability is known or should have been known by the covered entity." Id. § 8-107(15)(a).

Despite its similarities to the ADA, the NYCHRL requires "an independent liberal construction analysis in all circumstances, even where state and federal civil rights laws have comparable language." Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 31 (N.Y. App. Div. 2009); see also, e.g., Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 75 (2d Cir. 2015) ("[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims, construing [its] provisions 'broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible.'" (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013)).

## III. DISCUSSION

As explained below, Domino's summary judgment motion is granted in full, and Hat Trick and 230 West's motion is granted in part and denied in part.

### a. Domino's Motion

Domino's seeks summary judgment on all claims against it. Plaintiff did not oppose Domino's motion and has proffered no evidence from which reasonable jurors could find Domino's liable on any cause of action.  Indeed, Domino's submissions make clear that it had no role in operating the restaurant at issue here and that it does not own, lease, or manage the Store in any way.

(See Domino's Memorandum of Law, dated Feb. 7, 2020 [dkt. no. 107] at 3-6.)  Accordingly, the Court grants Domino's motion for summary judgment in its entirety.

### b. **Hat Trick and West 230's Motion**[2]

#### i. ADA Claims

##### (A)  "Alterations" Claim

Defendants first seek summary judgment on Plaintiff's ADA claim based on alleged "alterations" to the Store.  (See Memorandum of Law, dated Feb. 7, 2020 ("Def. Br.") [dkt. no. 88] at 5-8.)  The parties dispute whether changes made to the property over the years qualify as "alterations" under the ADA, and, if they are alterations, whether they were made accessible to the "maximum extent feasible."  See 42 U.S.C. § 12183(a)(2). The disputed changes include remodeling Hat Trick did in 2002 after taking possession of the Store -- including replacing the storefront, removing exterior double doors and installing a wider, single-leaf door, installing new glass and finishes, and sealing off a second, interior entrance that previously connected the Store to the adjacent building lobby -- as well as a second round of remodeling about ten years later, when Hat Trick installed diamond plating over the floor near the entrance, changed laminated countertops, and replaced exterior signage.

---

[2]     For simplicity, the term "Defendants" refers to Hat Trick and West 230, but not Domino's, in this section of the order.

(See Plaintiff's Memorandum of Law in Opposition, dated Mar. 12, 2020 ("Opp.") [dkt. no. 99] at 6-9.)[3]

The ADA's implementing regulations define the term "alteration" as "a change to a place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof."  28 C.F.R. § 36.402(b).  Alterations include "remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangements in the plan configuration of walls and full-height partitions."  28 C.F.R. § 36.402(b)(1).  The regulation goes on to explain that "[n]ormal maintenance, reroofing, painting or wallpapering, asbestos removal, or changes to the mechanical and electrical systems are not alterations unless they affect the usability of the building."  Id.  "Even a relatively inexpensive or localized modification may, however, so fundamentally change the use of a facility that we would regard it as an alteration, particularly if it affects the

_____

[3]    In discussing alleged alterations, Plaintiff also notes that while Hat Trick was a tenant, the "the sidewalk connecting the Domino's entrance and the Building" was replaced.  (Opp. at 9.)  Plaintiff has adduced no evidence, however, regarding who was responsible for that project or made any meaningful argument as to how it supports liability against Defendants under the ADA's "alterations" standard.  (See id.)  The Court therefore will not address whether replacing the sidewalk constituted a covered alteration under the ADA.

purpose, function, or underlying structure of the facility."
<u>Roberts v. Royal Atl. Corp.</u>, 542 F.3d 363, 370 (2d Cir. 2008).

If a modification qualifies as an alteration, the Court
must then assess whether the "alteration was made readily
accessible and usable to disabled individuals to the 'maximum
extent feasible.'"  <u>Id.</u> at 371 (quoting 42 U.S.C.
§ 12183(a)(2)).  Under the ADA's "maximum extent feasible"
requirement, alterations must be made accessible "except where
providing [accessibility] would be 'virtually impossible' in
light of the 'nature of an existing facility.'"  <u>Id.</u> (quoting 28
C.F.R. § 36.402(c)).  "Only if there is some characteristic of
the facility itself that makes accessibility 'virtually
impossible,' then, may the provision of access be excused."  <u>Id.</u>
at 372.  A court's assessment of whether an alteration was made
accessible to the maximum extent feasible "must be made with
respect to the state of the facility before the alterations in
question were made, rather than the facility's post-alteration
state."  <u>Id.</u>

Applying those principles here, the Court concludes that
reasonable jurors could find that three of Hat Trick's
modifications qualify as alterations.  Specifically, replacing
the exterior double doors with a single door, sealing up the
second entrance, and installing a new steel floor plate all
could affect the usability of the premises and the ability of

disabled persons to enter or move throughout the space.  See, e.g., De la Rosa v. 597 Broadway Dev. Corp., No. 13 Civ. 7999 (LAK) (MHD), 2015 WL 7351540, at *10 (S.D.N.Y. Aug. 4, 2015) (closure of wall opening "plainly reflects a change in the 'usability' of the space, and that alone should suffice to qualify the closure as an alteration"), report and recommendation adopted in part, 2015 WL 7308661 (S.D.N.Y. Nov. 19, 2016); Davis v. John S. Ciborowsku Family Trust, No. 11 Civ. 436 (PB), 2013 WL 1410007, at *2-3 (D.N.H. Apr. 8, 2013) (noting that DOJ guidance characterizes "a change of flooring" as an alteration "because it can affect the ability of a person in a wheelchair to travel throughout the store" and states that "the width of the door and the placement of hardware on [a] door can affect usability").  The remaining changes -- e.g., replacing signage, storefront glass, and interior laminates -- were all purely cosmetic and therefore could not affect usability or qualify as alterations.[4]

---

[4]    On a related issue, Defendants move for summary judgment on Plaintiff's claim alleging that Defendants altered areas of the Store that contained a "primary function," which would have required Defendants to make the "path of travel" to that area ADA compliant, subject to certain limitations.  (See Def. Br. at 7-8; see also Complaint dated Jan. 9, 2017 [dkt. no. 1] ¶¶ 18, 47.)  Because Plaintiff has not responded to Defendants' arguments regarding the "primary function" claim, the Court dismisses that claim as abandoned.  See, e.g., Marache v. Akzo Nobel Coatings, Inc., No. 08 Civ. 11049 (SHS) (AJP), 2010 WL 908467, at *15 (S.D.N.Y. Mar. 12, 2020) (collecting cases dismissing claims raised in the complaint but not addressed in plaintiff's response to a summary judgment motion).

Defendants are nevertheless entitled to summary judgment on the ADA alterations claim because no triable issue remains on the second part of the analysis -- i.e., whether the alterations were made accessible to disabled people "to the maximum extent feasible."  No reasonable juror could conclude that the alleged alterations could have been done in a way that would have facilitated wheelchair access to the Store.  The inability of wheelchair users to enter the Store derives entirely from the elevation difference between the Store's floor and the outside sidewalk; it has nothing to do with the steel plating on the floor, the single-leaf door at the entrance, or any other alleged alterations to the property.  Given the elevation difference, "the nature of [the] existing facility ma[de] it virtually impossible to comply fully with [the] accessibility standards through [the] planned alteration[s]."  See 28 C.F.R. § 36.402(c); see also Roberts, 542 F.3d at 372 (explaining that "if a doorway is altered but the hallways leading to and from the doorway remain unaltered and too narrow for wheelchairs, this would seem to be the sort of 'technical infeasibility' that would excuse a failure to provide accessibility" (citation omitted)).  Because Defendants could not have made the Store wheelchair accessible by altering the flooring or storefront, those alterations do not give rise to liability here.

The same is true with respect to the closure of the second entrance that previously connected the Store to the adjacent lobby.  When Hat Trick sealed that entrance, there was no way for wheelchair users to access it, as there was a step between the public sidewalk and the building's lobby.  (See Pl. 56.1 ¶¶ 31, 39).  Although that step was ultimately removed and wheelchair users can now enter the lobby, that does not support liability because the Court must analyze accessibility issues "with respect to the state of the facility before the alterations in question were made."  Roberts, 542 F.3d at 372. When the alterations were made, there was no wheelchair accessible route to the second entrance.  Accordingly, the Court grants summary judgment on the alteration claims.[5]

(B)  ADA "Readily Achievable" Claim

Defendants next seek summary judgment on Plaintiff's ADA claim regarding Defendants' alleged failure to remove barriers to wheelchair access.  (See Def. Br. at 8-17).  As noted above, discrimination under the ADA includes the "failure to remove architectural barriers . . . where such removal is readily achievable."  42 U.S.C. § 12182(b)(2)(A)(iv).  The ADA defines

---

[5]     Plaintiff also contends that Defendants' closing the second entrance violated the ADA's prohibition on alterations that decrease wheelchair access.  (See Opp. at 8-9 (citing 28 C.F.R. Pt. 36, App. D § 4.1.6(1)(a), 28 C.F.R. § 36.211(a)).)  When the door was sealed, however, it had no effect whatsoever on wheelchair users' ability to enter the Store because the outside step would have prevented them from reaching that door in the first place.  Plaintiff's argument therefore fails.

"readily achievable" as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  In determining whether a remediation is "readily achievable," the Court considers factors including, among other things, the cost of the remediation, the financial resources of the facility, and the impact the remediation would have on the facility's operation.  See id. § 12182(9)(A)-(D).

Under the ADA, the plaintiff bears the initial burden of demonstrating that the removal of an architectural barrier is readily achievable.  Roberts v. Royal Atl. Corp., 542 F.3d 363, 372 (2d Cir. 2008).  To discharge that burden, the plaintiff must "articulate a plausible proposal for barrier removal, 'the costs of which, facially, do not clearly exceed its benefits.'"  Id. at 373 (quoting Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995)).  Although neither a plaintiff's "estimates nor the proposal are required to be exact or detailed," id., the "plaintiff must provide at least some estimate of costs," Kriesler v. Second Ave. Diner Corp., No. 10 Civ. 7592 (RJS), 2012 WL 3961304, at *7 (S.D.N.Y. Sept. 11, 2012) (citing Roberts, 542 F.3d at 377-78).  If the plaintiff meets its prima facie burden, "the burden shifts to the defendant to establish that the costs of a plaintiff's proposal would in fact exceed the benefits."  Id. (citing Roberts, 542 F.3d at 373).

In opposing summary judgment, Plaintiff advances five proposals for removing the obstacles to wheelchair access at the Store.  (See Opp. at 12.)  As explained below, one of these proposals withstands summary judgment, while the rest do not.

## 1.  Reopening the Second Entrance

Plaintiff first proposes reopening the second entrance to the Store through the adjacent building lobby, which Hat Trick closed up with sheetrock when it took possession of the property in 2002.  (Opp. at 12, 14-15.)  Reasonable jurors could find this proposal to be "readily achievable" under the ADA. Although Defendants contend that summary judgment should issue because Plaintiff failed to provide a cost estimate for removing the sheetrock, that project is a "plausible, simple" remedy similar to those accepted elsewhere without an estimate on cost. See Celeste v. East Meadow Union Free Sch. Dist., 373 Fed. App'x 85, 88 (2d Cir. 2010) (remediation proposals included fixing curb cuts, cleat cleaners, and pavement).  Defendants have not established as a matter of law that the costs of reopening the second entrance would exceed the benefits.  Summary judgment is therefore denied with respect to this proposal.

## 2.  Installing a Platform Lift

Plaintiff next points to the design plans prepared by Defendants' architect and engineer for installing a platform lift.  (See Opp. at 12, 18-19.)  As set forth in Defendants' submissions, installing a lift would involve significant

17

structural interventions, would cost between $199,000 and $233,000 to complete even before accounting for the costs of geotechnical tests, relocating pipes and connections, and the losses from business interruption, and would require Hat Trick to close the Store for several weeks.  (<u>See</u>, <u>e.g.,</u> Def. Br. at 3.)  In terms of both cost and scope, that project is an enormous undertaking that no reasonable juror would regard as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  Because the undisputed facts show that the platform lift's costs clearly outweigh its benefits, Plaintiff cannot meet his prima facie burden under the standard for "readily achievable" barrier removal, and summary judgment is therefore granted with respect to the lift proposal.  <u>See</u> <u>Borkowski</u>, 63 F.3d at 140 ("[D]istrict courts [may] grant summary judgments for defendants in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly.").

### 3. <u>Plaintiff's Remaining Proposals</u>

Plaintiff's final three proposals include: (i) installing a ramp from the Store's interior first step and lifting the sidewalk or installing a platform lift; (ii) installing a ramp from the sidewalk into the Store according to designs prepared by Plaintiff's architect; or (iii) raising the sidewalk so that it is level with the floor of the Store.  (<u>See</u> Opp. at 12.)

With regard to each of these proposals, Plaintiff has not satisfied his prima facie burden of suggesting a "plausible" plan, "the costs of which, facially, do not clearly exceed its benefits."  See Roberts, 542 F.3d at 373 (quoting Borkowski v. Valley Cent. Sch. Dist., 63 F.3d at 138).  Plaintiff provides virtually no information regarding the first two proposals, and although his architect supplied designs for the ramp contemplated in the third proposal, those designs are incomplete, in some respects erroneous, and unaccompanied by even a general cost estimate.  Unlike removing sheetrock from a doorway, installing ramps and raising sidewalk are not "simple," "de minimis" solutions that appear facially plausible and cost-effective.  See Celeste, 373 Fed. App'x at 88.  Because Plaintiff failed to offer sufficient evidence to evaluate the plausibility and costs of these proposals, his claim that they are readily achievable amounts to the same "rank speculation" rejected by other courts.  See Kreisler v. Second Ave. Diner Corp., No. 10 Civ. 7592 (RJS), 2012 WL 3961304, at *8 (S.D.N.Y. Sept. 11, 2012).  Accordingly, the Court grants summary judgment with respect to Plaintiff's final three proposals.

ii.   NYSHRL Claim

The parties agree that the same standard governs the NYSHRL and ADA claims, and that the NYSHRL claim "rises or falls with the ADA claim."  Dicarlo v. Walgreens Boot All., Inc., No. 15 Civ. 2919 (JPO), 2016 WL 482982, at *2 (S.D.N.Y. Feb. 5, 2005)

(citing <u>Krist v. Kolombos Rest., Inc.</u>, 688 F.3d 89, 97 (2d Cir. 2012)).  Accordingly, Defendants' motion for summary judgment on the NYSHRL claim for injunctive relief is granted to the same extent as their motion regarding the ADA claim.

iii.  <u>NYCHRL Claim</u>

Defendants make two arguments for summary judgment on the NYCHRL claim.  First, they contend that the NYCHRL claim for disparate impact and aiding and abetting liability should be dismissed because "there are no relevant distinctions" between the NYCHRL and the ADA.  (Def. Br. at 18.)  But this single sentence is the only time in Defendants' briefing in which they mention theories of disparate impact and aiding and abetting liability under any statutory framework.  Because Defendants' argument on this point is insufficiently developed for the Court to assess its merits, it provides no basis for summary judgment.

Next, Defendants contend that the NYCHRL claim based on their alleged failure to provide Plaintiff a reasonable accommodation fails because they had no notice of Plaintiff's disability.  (Def. Br. at 18-19; Reply Memorandum of Law, dated Apr. 16, 2020 [dkt. no. 102] at 9-10.)  The NYCHRL requires anyone covered by the statute to "make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question <u>provided that the disability is known or should have been known by the covered entity</u>."  N.Y.C. Admin. Code § 8-107(4)(15)(a) (emphasis added).  Here, it is undisputed

20

that before Plaintiff filed this lawsuit, Defendants had no
notice that he ever visited the Store, much less that he was
disabled.  (See Pl. 56.1 ¶¶ 57-65.)  Although Plaintiff cites
cases holding that disabled individuals do not need to request
an accommodation affirmatively, those cases involved situations
in which the plaintiff's disability and need for an
accommodation were obvious.  See Nande v. JP Morgan Chase & Co.,
851 N.Y.S.2d 59 (Table), 2007 WL 2792155, at *4 (N.Y. Sup. Ct.
Sept. 21, 2007) (noting that the duty to provide an
accommodation under the NYCHRL "cannot arise if the employer is
unaware of the disability"); see also, e.g., Brown v. Cnty. of
Nassau, 736 F. Supp. 2d 602, 618-19 (E.D.N.Y. 2010) (noting that
under the ADA "it is well settled that a request for an
accommodation is not required where the disabled individual's
need for an accommodation is obvious").  Here, Plaintiff and his
disability were both unknown to Defendants.  Accordingly, the
Court grants summary judgment on Plaintiff's claim for failure
to provide a "reasonable accommodation" under the NYCHRL.

> ### iv. Negligence and NYSCRL Claims

Defendants also seek summary judgment on Plaintiff's claims
for common law negligence and violations of the NYSCRL.
Plaintiff withdrew those claims in his opposition brief, and
they are therefore dismissed.  (See Opp. at 2.)

## IV.  <u>CONCLUSION</u>

To the extent they are not addressed above, the Court has considered the parties' remaining arguments and finds them unavailing.  For the foregoing reasons, Domino's summary judgment motion is <u>GRANTED</u> in full.  Hat Trick and 230 West's motion is <u>GRANTED</u> with respect to the claims for negligence, violations of the NYSCRL, and for injunctive relief under (i) the ADA for alleged alterations; (ii) the ADA and NYSHRL based on removal of access barriers via proposals 2-5 on page 12 of Plaintiff's opposition brief; and (iii) the NYCHRL for failure to provide a reasonable accommodation.  Hat Trick and 230 West's motion for summary judgment is otherwise <u>DENIED</u>.  The Clerk of the Court shall close the open motions [dkt. nos. 80, 103.]


**SO ORDERED.**


Dated: June 5, 2020
       New York, New York

                                    _____
                                    LORETTA A. PRESKA
                                    SENIOR U.S. DISTRICT JUDGE